**Julia Yvonne Graham WALKER**

v.

**Henry Martin WALKER, Jr.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

May 23, 2006 Session.

June 1, 2006.

Permission to Appeal Denied by Supreme Court Oct. 30, 2006.

---

John W. Cleveland, Sweetwater, Tennessee, for the Appellant, Julia Yvonne Graham Walker.

Robert D. Arnold, Johnson City, Tennessee, for the Appellee, Henry Martin Walker, Jr.

## OPINION

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL PICKENS FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

In this divorce case, the issue presented is whether the trial court erred in denying the Wife post-judgment relief pursuant to Tenn. R. Civ. P. 60.02(1). The Wife filed her Rule 60.02 motion over four months after the final divorce decree, which incorporated the terms of the parties' settlement agreement, was entered. She argued that the court's order did not accurately reflect the parties' true agreement, due to "mistakes, inadvertence, surprise or excusable neglect." We affirm the trial court's judgment that Wife has not made the required showing that she is entitled to relief under Tenn. R. Civ. P. 60.02(1).

### I. Background

Julia Graham Walker[1] filed this action for divorce on November 21, 2001. At the trial, a major issue was whether certain parcels of real estate owned by Henry Walker, Jr. before the marriage, and inherited by Mr. Walker during the course of the marriage upon his parents' death, had become marital property through the doctrine of transmutation. According to Ms. Graham's brief, on the second day of trial, during a conference in the trial

---

1. The trial court's divorce decree returned Ms. Walker to her maiden name of Graham, and we will refer to her as "Ms. Graham" in this opinion.

judge's chambers, "the Trial Judge advised counsel that, based on the evidence he had heard thus far, he would not find transmutation of the real property now titled only in Mr. Walker's name that was owned by him prior to the parties' marriage." There is no transcript of the chambers conference, but the parties are in general agreement that the trial court made a statement to that effect.

Shortly after the conference, Ms. Graham's attorney at that time, Robert Jessee, stated in open court that "in light of your [the trial court's] ruling in chambers," the parties had reached a settlement agreement. Counsel for the parties then proceeded to discuss and outline the terms of the settlement agreement before the trial court. The trial court entered its final decree of divorce on January 8, 2003, in which it stated that the case was heard "upon the ... testimony of witnesses heard in open court, and the announcement by the parties just prior to the close of proof that they had reached a settlement on all issues." After this sentence, the trial court inserted the following handwritten sentence at Ms. Graham's insistence: "This followed the Court's inclination that it did not find a transmutation with respect to the real estate." The decree, after stating "[t]he parties then announced the following oral Marital Dissolution Agreement," recites the terms of the agreement, which primarily involved dividing the parties' property. The divorce decree was signed and approved for entry by counsel for both parties.

On May 29, 2003, Ms. Graham filed a motion for relief from the final judgment pursuant to Tenn. R. Civ. P. 60.02(1), that alleged, among other things:

> Due to mistakes, inadvertence or excusable neglect, the Order did not include a material and substantial part of the settlement. The settlement included, "all

assets or properties not claimed by Husband shall go to the Wife." The Wife relied upon this, in conceding to her attorney's advice, that, the settlement was fair to her, when she believed otherwise.

After a hearing on the Rule 60.02 motion, the trial court denied the motion.

## II. Issue Presented

Ms. Graham appeals, raising the sole issue of whether the trial court erred in denying her relief from the final divorce decree under Tenn. R. Civ. P. 60.02(1).

## III. Standard of Review

In this non-jury case, our review is *de novo* upon the record of the proceedings below; but the record comes to us with a presumption of correctness as to the trial court's factual determinations that we must honor unless the evidence preponderates against those findings. Tenn. R.App. P. 13(d); *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn.1995); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn.1993). The trial court's conclusions of law, however, are accorded no such presumption. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn.1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn.1993).

■ The Supreme Court has recently stated as follows regarding our review of the trial court's decision in a Rule 60 case:

> In reviewing a trial court's decision to grant or deny relief pursuant to Rule 60.02, we give great deference to the trial court. *See Underwood v. Zurich Ins. Co.*, 854 S.W.2d 94, 97 (Tenn.1993). Consequently, we will not set aside the trial court's ruling unless the trial court has abused its discretion. *See id.* An abuse of discretion is found only when a trial court has applied an incorrect legal standard, or reached a decision which is

against logic or reasoning that caused an injustice to the party complaining. *State v. Stevens,* 78 S.W.3d 817, 832 (Tenn. 2002) (*quoting State v. Shuck,* 953 S.W.2d 662, 669 (Tenn.1997)). The abuse of discretion standard does not permit an appellate court to merely substitute its judgment for that of the trial court. *See Eldridge v. Eldridge,* 42 S.W.3d 82, 85 (Tenn.2001).

*Henry v. Goins,* 104 S.W.3d 475, 479 (Tenn.2003)[internal quotation marks omitted]. A party seeking relief from a final judgment bears the burden of proof of showing his or her entitlement to such relief, and must offer proof of the basis upon which relief is sought. *Id.; Toney v. Mueller Co.,* 810 S.W.2d 145, 146 (Tenn. 1991). The *Toney* Court stated:

> Rule 60.02 is not meant to be used in every case in which the circumstances of a party change after the entry of a judgment or order. Nor is the rule a mechanism for use by a party who is merely dissatisfied with the result of a particular case. Rule 60.02 is meant to be used only in those few cases that meet one or more of the criteria stated. As recently stated by this Court, "Rule 60.02 acts as an escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules." *Thompson v. Firemen's Fund Ins. Co.,* 798 S.W.2d 235, 238 (Tenn.1990). Because of the importance of this "principle of finality," the "escape valve" should not be easily opened. When a party seeks the extraordinary relief permitted by Rule 60.02(1), "the burden is upon movant to set forth in a motion or petition, or in affidavits in support thereof, facts explaining why movant was justified in failing to avoid mistake, inadvertence, surprise or neglect." *Hopkins v. Hopkins,* 572 S.W.2d 639, 640 (Tenn.1978). *See also, Travis v. City of Murfreesboro,* 686 S.W.2d 68 (Tenn.1985).

*Toney,* 810 S.W.2d at 146.

## IV. Analysis

█ Tenn. R. Civ. P. 60.02(1) provides that "[o]n motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect[.]" In her Rule 60.02(1) motion, Ms. Graham alleges that the final decree incorporating the terms of the MDA did not accurately reflect the parties' agreement. She asserts that her then-attorney, Mr. Jessee, stated in court that part of the agreement was to the effect that "all assets or properties not claimed by Husband shall go to Wife." Ms. Graham admits, however, that this statement does not appear in the transcript of the proceedings. Ms. Graham did not call Mr. Jessee as a witness during the Rule 60 motion hearing.

The divorce decree includes the following provision as part of the property division: "The [Husband] shall receive as his property, free and clear of any claim of [Wife], those items of personalty set forth in his Rule 9 Statement which he claims as his separate property and also those items of marital personal property colored-coded in yellow with the exception of the following which [Wife] shall receive...." Ms. Graham complains that the trial court's order "omitted the color-code attachment" and so "it was impossible for [her] to ascertain which items of personal property (particularly within the marital residence on the premises where she is living) are supposed to become the property of the [Husband]." Ms. Graham stated at the motion hearing that she never saw the color-coded statement until well after the entry of the final decree. However, the

statement was made an exhibit at trial and included in the court file. Ms. Graham testified as follows during the motion hearing:

Q: Okay. Now, am I understanding you to take the position that you have never seen this color-coded document?

A: No, sir, Mr. Arnold, I didn't. I saw it when you had it. And I think we were in this courtroom. But you had it in your hands: "Your Honor, this is a color-coded document we are entering." I saw it as a collective thing in your hand. I never was allowed to review it line by line or page by page.

Q: Do you not remember, Ms. Graham, my introducing that as an exhibit and, at the same time, simultaneously presenting Mr. Jessee with a copy of it?

A: Mr. Arnold, things were flying so fast in that courtroom, no, I don't remember you handing Mr. Jessee a copy of it. And, unfortunately, Mr. Jessee never gave me a copy of it, even though I asked him repeated times for it.

Q: Well, did you ask him to see it before the settlement was announced?

A: I can't recollect at that point in time if I did or not, because I was very wrung out emotionally at that particular point in time.

THE COURT: Well, how could you agree to anything, as far as his getting certain items that were color-coded yellow with something, if you hadn't seen the sheet?

A: You tell me, Judge Seeley, I don't know. Because I have got repeated documentation of asking Mr. Jessee for that document. And I don't know what happened to the one you handed him—

THE COURT: What about at this hearing itself? It was presented to me, just like in paragraph—that he will keep those things in his Rule 9 statement that he claimed as his separate property ...

Now, are you telling me, during the negotiations for settlement you didn't look to see what he was claiming?

A: Judge Seeley, I don't remember having that color-coded document in our hands or in those discussions. I am not going to say it wasn't there, but I don't remember it.

Ms. Graham further testified as follows regarding what she knew about the trial court's final decree, and when she knew it:

Q: You were furnished a copy of that—as I understand it, you were faxed a copy of that order on January the 8th, the very date that it was entered?

A: Yes, I was.

Q: And you knew full and well the content of that order from January the 8th on?

A: Yes.

\* \* \*

Q: And you discussed with Mr. Jessee on several occasions appealing. I am not sure I know what you wanted to appeal, but appealing. So you were well aware of the fact that you had 30 days to file an appeal, weren't you?

A: Yes.

Q: From the date of entry of that order?

A: Yes.

Q: And you even consulted with other attorneys during that period of time?

A: Late in that time frame, yes, sir, Mr. Arnold.

\* \* \*

Q: And when you consulted these attorneys you were made more fully aware of the fact that you had 30 days to file an appeal or file something with the court to reconsider it?

A: Yes, sir.

\* \* \*

Q: Did you have occasion to consult with your attorney between the time the announcement [of the parties' settlement agreement] was made in court and when the order was presented to the Court?

A: Several times.

Q: And did you bring to his attention the various items that appear in your Rule 60 motion?

A: On several occasions.

Ms. Graham testified that she told Mr. Jessee that she wanted to appeal the trial court's judgment, and that he told her he would not file a notice of appeal three days before the judgment was to become final and unappealable. Ms. Graham also stated that she consulted with another attorney about handling the appeal seven days before the notice of appeal had to be filed. Ms. Graham asserts that she was unable to find an attorney who was not too busy to file the requisite notice of appeal.

In *Moody v. Moody*, 681 S.W.2d 545 (Tenn.1984), the Supreme Court was presented with a situation bearing substantial similarity to this one. In *Moody*, the wife filed a Rule 60 motion alleging "in substance that the distribution of property set forth in the decree was different from her understanding of the oral ruling of the trial judge[.]" *Id.* at 546. The trial court found that Ms. Moody did not receive notice of the final order, through "excusable neglect or inadvertence." *Id.* The Supreme Court held as follows:

> In our opinion, the action of the trial judge was in error. It is undisputed that Mrs. Moody was represented by counsel, that her counsel knew of the property distribution announced by the court and set forth in the original decree of divorce, that he had approved the decree entered by the trial court and knew of its entry. Counsel's knowledge must be attributed to his client, if the actions of the court are to have any

efficacy. If it were otherwise, the limitation on time of filing a notice of appeal could be easily circumvented, and that is not the purpose of Rule 60.02.

*Id.* As *Moody* suggests, our courts have generally recognized that an attorney's negligence is not "excusable neglect" and that it is not grounds for Rule 60 relief. *See Munday v. Brown*, 617 S.W.2d 897 (Tenn.Ct.App.1981); *Barber & McMurry, Inc. v. Top–Flite Development Corp., Inc.*, 720 S.W.2d 469 (Tenn.Ct.App.1986).

 Ms. Graham recognizes this general principle, and so on appeal she argues that "a different result has been reached when the attorney for the client seeking Rule 60 relief has been guilty of *gross* negligence, which may be considered excusable neglect[.]" (Emphasis added). Ms. Graham cites *Terminix Int'l Co. v. Tapley*, No. 02A–01–9701–CH–00028, 1997 WL 437222 (Tenn.Ct.App., Aug. 4, 1997) in support of this proposition. However, Ms. Graham did not raise this issue at the trial level. As a general rule, "questions not raised in the trial court will not be entertained on appeal." *City of Cookeville ex rel. Cookeville Regional Med. Ctr. v. Humphrey*, 126 S.W.3d 897, 905–06 (Tenn.2004); *In re Adoption of E.N.R.*, 42 S.W.3d 26, 32 (Tenn.2001).

Based on our review of the record, we find no error in the trial court's decision that Ms. Graham did not present proof demonstrating that she is entitled to Rule 60.02(1) relief from the court's final decree of divorce. Ms. Graham was provided a copy of the decree the same day it was entered. She was apparently dissatisfied with it from the time she saw it, if not earlier. Her failure to take any action with the trial court until more than four months after entry of the order is not justified by mistake, inadvertence, surprise or excusable neglect. The trial court's

refusal to grant her relief under Tenn. R. Civ. P. 60.02(1) was not an abuse of its discretion. For the same reasons, the trial court did not err in refusing Ms. Graham's request to set aside the judgment and then re-enter it in order to ostensibly give her another 30 days to file a notice of appeal. *See First Nat'l Bank of Polk County v. Goss,* 912 S.W.2d 147 (Tenn.Ct.App.1995).

## *IV. Conclusion*

For the aforementioned reasons, the judgment of the trial court is affirmed. Costs on appeal are assessed to the Appellant, Julia Yvonne Graham Walker.