# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### May 19, 2009  Session

## THOMAS S. STARKS v. TROY D. WHITE

### Direct Appeal from the Chancery Court for Henry County
#### No.  20107     Ron E. Harmon, Chancellor

---

### No. W2007-02817-COA-R3-CV - Filed June 17, 2009

---

This is a breach of contract case.  Purchaser/Appellant appeals the trial court's finding that Purchaser/Appellant is in breach of the contract for sale of real property, and entry of judgment  in favor of Seller/Appellee pursuant to the default provisions of the contract.  Specifically, the trial court found Purchaser/Appellant in breach on grounds of late payments, failure to list Seller/Appellee as additional insured, and failure to provide proof of termite treatment.  We modify and affirm on the grounds of failure to list Seller/Appellee as an additional insured and on failure to provide termite protection contract.

### Tenn. R. App. P.3. Appeal as of Right; Judgment of the Chancery Court Modified and Affirmed

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Richard L. Dunlap, III, Paris, Tennessee, for the Appellant

Terry J. Leonard, Camden, Tennessee, for the Appellee

### MEMORANDUM OPINION[1]

On or about February 2, 2004, Appellee Thomas S. Starks and Appellant Troy D. White

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value.  When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

entered into a contract for the sale of real property located in Henry County, Tennessee. Pursuant to the contract, Mr. White agreed to purchase the real property at issue from Mr. Starks for $77,000.00.

Mr. White allegedly failed to perform under the contract and, on July 24, 2005, Mr. Starks sent Mr. White an "eviction notice." Therein, Mr. Starks asserts that Mr. White is in breach of contract in that he is two months behind in his payments, and has failed to properly care for the property. Mr. Starks sent two subsequent letters (dated September 8, 2005 and October 17, 2005) informing Mr. White that he was allegedly in breach of the contract for sale of real property. Thereafter, on October 26, 2005, Mr. Starks filed suit against Mr. White in the Chancery Court of Henry County. The complaint alleges, in relevant part, that:

> 7. ...Defendant has breached Item One (1) of the contract as he has failed to pay the monthly installments as set out in the agreement.
>
> 8. Plaintiff alleges the Defendant has breached Item Two (2) of the contract as he has made changes to the subject property without the express written permission of the seller.
>
> 9. Plaintiff alleges the Defendant has breached Item Four (4) of the contract in failing to keep [the] property up....

On November 23, 2005, Mr. White filed an answer denying the material allegations of the complaint and a counterclaim alleging that Mr. Starks was in breach of the contract in failing to remove certain items from the property. In his December 21, 2005 answer, Mr. Starks denies the allegations made in the counterclaim.

Following a rather protracted discovery period, the trial court convened to hear proof on July 17, 2007. However, no proof was actually adduced at that hearing; rather, the court and the attorneys discussed the fact that this case hinges upon proof of Mr. White's payment history. At this hearing, Mr. Starks's attorney indicates that he plans to proceed on breach of contract based not only upon Mr. White's alleged failure to make timely payments, but also upon Mr. White's alleged failure to list Mr. Starks as an additional insured, and upon Mr. White's alleged failure to provide termite protection on the property as required under the contract. Although these two grounds were not pled in the original complaint, no objection was lodged by Mr. White's attorney; consequently, we conclude that these grounds were tried by consent of the parties as contemplated under Tenn. R. Civ. P. 15.02. At the July 17, 2007 hearing, the parties agreed to submit the case on-briefs with the necessary proof attached.

As instructed by the court, the parties submitted briefs to the court. Attached to the briefs are cancelled checks and receipts showing Mr. White's payments. In addition, Mr. White provided his proof of insurance, and proof of pest control. Based upon this evidence, on December 4, 2007, the court entered its order, which reads, in pertinent part, as follows:

[T]he Court finds that the payments were more than ninety (90) days past due by January 8, 2007 and proper notice was given under the contract of the default.

...the Court finds that the contract was further breached by the failure of [Mr. White] to maintain insurance showing [Mr. Starks] as additional insured.

...the Court finds that [Mr. White] failed to maintain a termite contract as required by the contract.

IT IS FURTHER, ORDERED that [Mr. Starks] shall receive a judgment against [Mr. White] as per the default provisions of the contract and that said contract dated February 2, 2004 is deemed void and installments paid by [Mr. White] shall be deemed rent.

IT IS FURTHER, ORDERED that [Mr. White's] counter complaint is hereby dismissed.

On April 14, 2008, the trial court entered a subsequent order, which dismisses all pending motions. Mr. White appeals and raises three issues for review as stated in his brief:

1. Did the Chancellor err in holding that the payments were more than ninety (90) days past due by January 8, 2007, and proper notice was given under the contract of the default?

2. Did the Chancellor err in holding that the contract was further breached by the failure of the purchaser/Defendant to maintain insurance showing the seller/Plaintiff as additional insured?

3. Did the Chancellor err in finding that the Defendant failed to maintain a termite contract as required by the contract?

Because this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. *See* Tenn. R. App. P. 13(d).

In resolving a dispute involving a contract, "our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language." *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn.1999). If the terms of the contract are unambiguous, the determination of the parties' intent is a question of law for the court. *Warren v. Metro. Gov't of Nashville and Davidson County*, 955 S.W.2d 618, 623 (Tenn.Ct.App.1997). Provisions in a contract

-3-

"should be construed in harmony with each other, if possible, to promote consistency and to avoid repugnancy between the various provisions of a single contract." *City of Cookeville v. Humphrey*, 126 S.W.3d 897, 904 (Tenn.2004) (quoting *Guiliano*, 995 S.W.2d at 95). In so doing, courts should read the contract in its entirety to determine if one provision modifies, limits, or explains another provision. *Associated Press v. WGNS, Inc.*, 348 S.W.2d 507, 512 (Tenn.Ct.App.1961).

The relevant portions of the contract at issue in this case are as follows:

1. Purchase Price. The purchase price for the Property shall be Seventy-Seven Thousand and No/100 ($77,000.00) Dollars, which sum shall be payable as follows:

(1) The purchase price of $77,000.00 shall be payable in monthly installments of $450.00, which began on August 8, 2003 and shall continue until said purchase price is paid in full.

\*                           \*                          \*

4. Purchaser will, at their own expense, keep said property in as good a state of repair as it is at present, ordinary wear and tear and acts of God excepted. Purchaser will pay all taxes before they become delinquent, and will keep the buildings insured for at least the amount of the outstanding indebtedness due to Seller under this contract, and will deliver to the Seller a copy of said insurance policy with loss payable clause to the parties hereto, as their interests may appear. Purchaser shall also keep a termite contract on the above described real estate with a company that is agreeable to both parties.

\*                           \*                          \*

7. Default. Should Purchaser default in the performance of this Contract, then the earnest money paid shall be retained by Seller as liquidated damages. If any installment as above stated shall be in default for ninety (90) days, then all succeeding installments then outstanding shall mature at once, without demand or notice, at the option of the lawful owner of this contract, and if the full consideration is not then paid within fifteen (15) days of the mailing of written notice to pay to the Purchaser's last know post office address, then all sums paid to said date of default shall be treated as Purchaser's reasonable rents for the use and occupancy of said property and shall be forfeited to the Seller for such rent and as damages for failure to carry out the terms of this contract and this contract shall stand at an end.

As noted above, the record contains a series of cancelled checks and receipts dating from 2003 through 2007. Under section seven of the contract, *see supra*, Mr. White's payments can be up to ninety days late before he is actually in default. We have reviewed all of the checks and receipts submitted in this case, from all of which it appears that Mr. White was consistently late with his payments. But, again, the default period is ninety days under the contract. Although Mr. White's payments are late, none appear to be more than ninety days so. From the proof, Mr. White's November 8, 2006 payment was not made until January 12, 2007. His December 8, 2006 payment was not made until January 30, 2007, and the January 8, 2007 payment was not made until February 20, 2007. Although these payments were as much as sixty-four days late, we cannot agree with the trial court that more than ninety days elapsed between the payment and its due date so as to render Mr. White in default under the contract. Consequently, we cannot find breach of contract on the ground of late payment.

Concerning the insurance, the proof in the record shows that Mr. Starks was never listed as an additional insured under Mr. White's policy. Although the record contains a "policy change request" form, by which Mr. White purports to add Mr. Starks to the policy, we can find no date on this change request. More importantly, however, we find no proof in record that this policy change was ever actually made. Therefore, we conclude that Mr. White was, in fact, in breach for failure to add Mr. Starks as an additional insured on the insurance policy as required under section four of the contract.

Turning to the required termite contract, we find no proof of its existence in the record. Although the record contains evidence that Mr. White had the property treated for "general" pests, a specific termite contract is simply not in this record. Therefore, we cannot conclude that the trial court erred in reaching the conclusion that Mr. White breached the contract by failing to provide proof of a termite protection contract.

For the foregoing reasons, we reverse the trial court's finding that the contract was breached due to late payments by Mr. White. We affirm the order of the trial court on all other issues. Costs of this appeal are assessed against the Appellant, Troy D. White and his surety.

_____
J. STEVEN STAFFORD, J.