IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 13, 2017 Session

## REGINA MONTANNA MARIE MULLINS v. AMY PAIGE HERNANDEZ

**Appeal from the Circuit Court for Hawkins County**
**No. 37CC1-2017-CV-16     Alex Pearson, Judge**

_____

**No. E2017-00356-COA-R3-CV**
_____

Regina Mullins (petitioner) sought an order of protection against Amy Hernandez (respondent), the grandmother of one of petitioner's children. The parties were living together in an apartment when respondent allegedly threatened petitioner and her mother with a handgun. After a hearing, the trial court found that respondent did threaten petitioner, and that "there was a gun involved," but held that these facts did not constitute "legally sufficient proof for an order of protection to be issued." We hold that the facts found by the trial court provide a legal basis for the issuance of an order of protection under the statutes governing such orders, Tenn. Code Ann. § 36-3-601 *et seq*. (2017). Consequently, we reverse the judgment of the trial court and remand for the issuance of a protective order.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Elizabeth R. McClellan, Johnson City, Tennessee, for the appellant, Regina Montanna Marie Mullins.

Lesley A. Tiller, Jonesborough, Tennessee, for the appellee, Amy Paige Hernandez.

**OPINION**

## I.

Petitioner filed her petition for an order of protection on January 19, 2017. She alleged that during an argument with the respondent in their shared apartment, the respondent

> pulled out a gun as I was in the room and I heard her threaten to shoot my mom as she was leaving with my daughter. . . . [Respondent] then started cocking the gun at my door and yelled it was fully loaded. I felt terrified. I told my grandmother [to] pick me up the next morning because [respondent] threatened to shoot me and my family (I had on video, she took my phone.)

The court issued a temporary order of protection that same day. Ten days later, a hearing took place before the trial court. Respondent represented herself at the hearing.

Four people testified: petitioner, her mother, respondent, and respondent's husband. Petitioner and her mother testified that respondent threatened them while brandishing a cocked and loaded nine-millimeter handgun. Respondent admitted getting the firearm out of a safe in her bedroom. She argued that she feared for her own safety. Respondent attempted to enter into evidence a statement or statements allegedly made by petitioner's father to respondent's husband. The trial court excluded this testimony as hearsay. Respondent testified that she made her threat after petitioner accidentally injured respondent's granddaughter by shutting petitioner's bedroom door on the granddaughter's foot.

After the argument began, petitioner called her mother and asked her to come and pick up petitioner's infant daughter. Petitioner thus removed her daughter from the situation. Petitioner and her mother testified that petitioner was unable to leave the apartment herself because there was not room in her mother's vehicle. Early the next morning, petitioner called her grandmother to come get her and her things. Petitioner moved out of the apartment.

The trial court delivered its findings of fact orally from the bench at the end of the hearing:

> To me it's a close case, and I can understand how reasonable minds could differ with regard to it based on the fact that there was a gun involved. I find that there was legally insufficient proof to establish that Ms. Mullins was in fear of

- 2 -

physical harm. It's a close call, and there was a gun involved, but based on the testimony here, the police were called out. The mother came and picked up a child and left with the child. It seems to me that a lot of this is based on – and I think I heard the word "drama," and, of course, I don't mean to characterize a firearm – any time a firearm comes into a case as being drama because that's a potentially dangerous situation, but from the testimony I heard and the facts that were introduced here today, I don't feel that there is legally sufficient proof for an order of protection to be issued. There was no restriction of Ms. Mullins about the home. She could come and go.

\* \* \*

My job is not easy because I don't, I don't disbelieve what you [petitioner] told me. I just have to make sure and comply it with the law, and under these facts, I just can't find that there's a basis for an order of protection.

Despite the trial court's above-stated interpretation of the protective order statutes, it further stated:

[A]ll this needs to stop because it's obvious to me that you all don't need to be living together.

\* \* \*

[B]ased on the fact there was no restriction, there was back-and-forth between – in the house, the child left, I'm not going to issue an order of protection. But I can tell [respondent] that you don't really need to have any contact with this lady because if you can't get along any better than that – but Juvenile Court can handle it. . . . [J]ust friendly advice is, is don't have any contact[.]

Petitioner timely filed a notice of appeal.

## II.

Petitioner raises the issue of whether the trial court erred in declining to extend the order of protection.  Respondent argues her own issue, whether the trial court erred in excluding as hearsay her husband's testimony as to what petitioner's father told him.

## III.

In this non-jury case, our review is de novo upon the record, with a presumption of correctness as to the trial court's factual determinations, unless the evidence preponderates otherwise.  Tenn. R. App. P. 13(d); *Murfreesboro Med. Clinic, P.A. v. Udom*, 166 S.W.3d 674, 678 (Tenn. 2005).  The trial court's conclusions of law are not accorded a presumption of correctness.  *Udom*, 166 S.W.3d at 678; *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996).  Our de novo review is subject to the well-established principle that the trial court is in the best position to assess the credibility of the witnesses; accordingly, such determinations are entitled to great weight on appeal. *Columbus Med. Servs., LLC v. Thomas*, 308 S.W.3d 368, 383 (Tenn. Ct. App. 2009); *Vantage Tech., LLC v. Cross*, 17 S.W.3d 637, 644 (Tenn. Ct. App. 1999).

## IV.

As this Court has recently observed,

> In Tennessee, victims of domestic violence may petition for an order of protection.  Tenn. Code Ann. 36–3–602(a) (2014).  Our General Assembly created the current statutory scheme to enhance the protection of domestic abuse victims.  *Id*. § 36–3–618.  By statute, "[a]ny domestic abuse victim, . . . who has been subjected to, threatened with, or placed in fear of, domestic abuse, . . . may seek relief under this part by filing a sworn petition alleging domestic abuse . . . by the respondent."  *Id*. § 36–3–602(a).  The statute defines "abuse" to include "placing an adult or minor in fear of physical harm."  *Id*. § 36–3–601(1).  "Domestic abuse" means committing abuse against a domestic abuse victim, another statutorily defined term.  *Id*. § 36–3–601(4).  Persons within the category of "domestic abuse victim" include "[a]dults or minors . . . who live together or who have lived together."  *Id*. § 36–3–601(5)(B), (C).

- 4 -

> If the petitioner shows good cause, the court may issue an ex parte temporary order of protection. *Id*. § 36–3–605(a). Within fifteen days after the respondent is served with the ex parte order, the court must hold a hearing to determine whether to dissolve or extend the ex parte order for a definite period of time, not to exceed one year. *Id*. § 36–3–605(b). A petitioner seeking an extension of an ex parte order must establish domestic abuse by a preponderance of the evidence. *Id*.; *see also **Collins v. Pharris***, No. M1999–00588–COA–R3–CV, 2001 WL 219652, at *4 (Tenn. Ct. App. Mar. 7, 2001).

***Honeycutt ex rel. Alexander H. v. Honeycutt***, No. M2015-00645-COA-R3-CV, 2016 WL 3662166, at *3-4 (Tenn. Ct. App., filed June 30, 2016) (footnote omitted). In order to establish domestic abuse qualifying as a legal ground to extend an order of protection, a petitioner "merely ha[s] to show fear of physical harm . . . Proof of actual physical abuse is not required." *Id.* at *4; *see also **Long v. Brown***, No. E2013-00802-COA-R3-CV, 2014 WL 295713, at *5 (Tenn. Ct. App., filed Jan. 28, 2014).

At the time of the incident, petitioner was living with her seven-month-old daughter in the same apartment as respondent, who is the paternal grandmother of the child. Also present in the apartment was another of respondent's granddaughters, named Keeley, who was then eleven years old. Petitioner testified as follows regarding the start of the argument:

> As my daughter had started crying, I told Keeley to move once. She didn't listen, and she was in the only path for me to pick up my daughter. So I raised my voice and told her to move, and she moved. I picked up my daughter, and [respondent] came in the room and threatened me, told me she was pretty much going to hurt me. I had my child in my arms at the time, and . . .
>
> Q. What exactly did she say to you?
>
> A. Her exact words is, "If you raise your voice at my granddaughter again, I will kick your ass."
>
> Q. Okay. And did you feel that that was a, kind of a vague and empty threat, or did you feel like that was a real threat?

A. I felt like it was a real threat.

Petitioner testified that she shut herself in her bedroom with her infant daughter and called her mother to come pick up the child. She testified, "I felt it was very unsafe because at the time I heard [respondent] go to her back bedroom and open her safe and get her gun out."

Petitioner's mother arrived and took the child. Petitioner testified that she saw respondent walking behind them with her firearm in her hand. In the meantime, respondent had called the police. They arrived and advised everyone to calm down. Petitioner stated that after the police left, respondent "went up and down the hallway cocking the gun and said that the next time she seen me or my family, she was going to shoot us." She recorded respondent's actions on her cell phone, but respondent admittedly took the phone from her and kept it. Petitioner further testified:

> I just locked myself in the room. [Respondent] called the cops again, and they came in again and pretty much said the same thing to me again and walked out. And the [next] morning, I had had my grandmother come and get all my stuff about 8:00 in the morning while she was asleep to avoid confrontation.

Petitioner moved out of the apartment and found a new place to live.

The night of the incident, a Facebook post was entered on respondent's Facebook webpage. It was a picture of respondent's handgun, bearing the caption "Whenever anyone feels froggy please jump I'm dying to try this out." Petitioner testified that she saw the post before she blocked respondent on her Facebook account. She felt that it was a threat aimed at her. A screenshot of the Facebook post was entered as an exhibit at trial. Respondent denied posting the picture, stating "There's so many photo shopping availabilities today." She was not otherwise asked for an explanation of how the picture and statement were posted to her account.

Petitioner's mother testified that petitioner called her that evening and reported respondent was threatening her, and asked her mother to pick up her daughter because she didn't feel safe. The mother drove to the apartment with a friend. She further testified:

> And once I got all [the child's] things together, I was going out the door. [Respondent] was following behind me. She was calling me names, cursing at me, and once I got outside, I

kept walking. I had my granddaughter, seven months old – well, six months then, and had her in my arms carrying her, and she was calling me names, cussing at me. I turned around and faced her. I said, "You know, you just need to shut up," and that's when I saw her gun in her hand. She said, "That's okay. I'm not afraid of you, and I'm not afraid to use the gun." So I just turned my back to her to keep my granddaughter safe and kept walking.

Respondent testified that the argument began when petitioner screamed at respondent's granddaughter Keeley. Respondent testified as follows:

I said, "Who are you screaming at like that?", and [petitioner] said, "Keeley. She's in my way, and I told her to move." I said, "No." I said, "You don't even scream at my kids like that."

\* \* \*

I will not allow my kids to be abused. So then I go to walk out, and when I walked out, Keeley walked out behind me, and she slammed the door again and bruised the back of Keeley's foot, and Keeley said, "Ow." I said, "What happened?" She said, "Regina just shut the door on my foot." That's when I reached the door, but I said, "Let me tell you something. If you injure one of my kids, me and you will go at it," and that's what – the words I used. I have a job to protect my grandkids. If she wants to be angry and childish and immature, you do it somewhere else, not with my grandkids.

Respondent admitted getting her gun out of the safe. She denied threatening anyone with it.

Respondent attempted several times to get into evidence a statement or statements that petitioner's father allegedly made to respondent's husband. Petitioner's father was not called to testify. The trial court ruled that his statements would constitute hearsay. Respondent did not object to these rulings at the hearing. Neither did she ask to make an offer of proof, so the substance of the statements is not in the record. Respondent's husband testified that petitioner's father called him, and that what was said caused him to have concern for respondent's safety. On appeal, respondent argues that the trial court

erred in ruling that the statements were hearsay because they were not offered to establish the truth of the matter asserted, but rather to establish respondent's state of mind in response to them, *i.e.*, that she was concerned for her safety and acted with the intent to protect herself. However, respondent did not present this argument to the trial court. She cannot raise it for the first time on appeal. ***City of Cookeville ex rel. Cookeville Regional Med. Ctr. v. Humphrey***, 126 S.W.3d 897, 905-06 (Tenn. 2004) ("As a general rule, questions not raised in the trial court will not be entertained on appeal"), quoting ***Lawrence v. Stanford***, 655 S.W.2d 927, 929 (Tenn. 1983) (internal quotation marks omitted). Moreover, the fact that the content and substance of the statements ruled to be hearsay are not in the record makes it most difficult to assess the question of whether they were asserted for their truth, or for another purpose.

The trial court credited petitioner's testimony. We have observed that "[t]he determination of the preponderance of the evidence regarding allegations of abuse is largely fact-driven, and dependent on credibility, including demeanor assessments." ***Long***, 2014 WL 295713, at *5. At the close of the hearing, the trial court stated to petitioner, "I don't disbelieve what you told me." The facts thus established in the record include that respondent threatened petitioner and her mother while brandishing a cocked and loaded handgun. Petitioner testified several times that respondent's actions placed her in fear of physical harm. Regarding the Facebook post depicting the firearm and stating "I'm dying to try this out," the context of the trial court's statements in its ruling clearly imply that the trial court disbelieved respondent's assertion that she did not post it to her own account. The trial court said:

> Ma'am, posting stuff like this on the Internet is foolish. It could be read two ways. It could be read that I'm prepared to defend myself.
>
> [Respondent]: And this is how . . .
>
> THE COURT: I don't want to hear from you. I'm telling you it can be read that way, or it can be read that you're out looking for a fight. There is a big difference between those two.

The trial court ruled that "under these facts, I just can't find that there's a basis for an order of protection." We disagree with the trial court's legal interpretation of Tenn. Code Ann. § 36-3-601 and -602. We hold that the facts found by the trial court provide a legal basis for the extension of the order of protection in petitioner's favor.

**V.**

The judgment of the trial court is reversed. The case is remanded to the trial court with instructions to enter an order of protection in accordance with the provisions of Tenn. Code Ann. § 36-3-601 *et seq.* Costs on appeal are assessed to the appellee, Amy Paige Hernandez.

_____
CHARLES D. SUSANO, JR., JUDGE