IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
On-Briefs September 12, 2007

## JAN MARIE VAUGHN v. WILLIAM DANIEL VAUGHN

**A Direct Appeal from the Chancery Court for Madison County**
**No. 63037    The Honorable J. S. Daniel, Senior Judge**

**No. W2007-00124-COA-R3-CV - Filed January 18, 2008**

In this divorce case filed by the Appellee/Mother, she was granted a divorce on the grounds of inappropriate marital conduct. The trial court divided the marital property and ordered the Appellant/Father to pay alimony *in futuro* and child support for the parties' two minor children, the oldest of whom is severely disabled. The trial court ordered the Father to acquire the equipment necessary to take care of the child while visiting in his home and to begin intensive training in the use of equipment. Both parties were to maintain term life insurance in the face amount of $250,000. Additionally, the trial court awarded Mother attorneys' fees in the amount of $15,000.00 and ordered Father to pay child support arrearages in the amount of $4,756.00. Father appeals the decision of the trial court regarding the award of alimony, the upward deviation of child support, the award of attorneys' fees, and the award of support arrearages. We reverse in part, affirm in part and remand.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed in Part, Affirmed in Part, and Remanded**

W. FRANK CRAWFORD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S. and DAVID R. FARMER, J., joined.

William D. Vaughn, Pro Se

Lanis Karnes of Jackson, Tennessee for Appellee, Jan Marie Vaughn

### OPINION

### Facts & Procedural History

Appellant, William D. Vaughn (hereinafter, "Father") and Appellee, Jan M. Vaughn (hereinafter, "Mother") were married in September of 1991. While Father obtained his undergraduate and law degrees and his bar license (after his third attempt), Mother supported the family by working as a dental hygienist. The parties had two children, born on March 23, 2002 and September 15, 2004, respectively.

Shortly after her birth, the oldest daughter (hereinafter, "H.L.V.") became disabled when she drank contaminated formula in the hospital. A civil lawsuit in Chattanooga is pending against the hospital. H.L.V. is severely disabled, is not ambulatory, and requires several different types of therapy. She is fed through a gastrostomy tube, has seizures, and is maintained by a nebulizer, Hoyer lift, and an apnea monitor at night. H.L.V. requires twenty-four (24) hour care, including being turned every two (2) hours at night. Her caretakers need special training in the use of her equipment, her special car seat, and her therapy. Currently, H.L.V. is a TennCare recipient and receives a monthly disability benefit in the amount of $412.00. The parties' youngest child (hereinafter, "A.J.V.") is a healthy child and very involved in her older sister's life.

Mother is unable to work full-time due to high level of care that H.L.V. requires. TennCare provides daily nursing care for twelve (12) hours a day, seven (7) days a week. Mother is responsible for the other twelve (12) hours, including overnight care, and is also the sole care-giver on days when the nurses are unavailable.

In March of 2004, Mother and Father separated. Father had an extramarital affair with his secretary and fathered a child by her. During Father's affair, Mother became pregnant with the parties' second child. Since the separation, Mother has been the primary residential care giver of both children, and Father resides with his paramour and their son.

On April 27, 2005, Mother filed a Complaint for legal separation or divorce upon grounds of inappropriate marital conduct. On October 24, 2005, the parties signed a handwritten, two (2) page document entitled "Jan M. and Danny Vaughn Mediation" (hereinafter, the "Mediation Agreement"). This MA established support amounts, visitation, and divided some marital property.

In January of 2007, the trial court awarded Mother a divorce on the grounds of Father's inappropriate marital conduct. The "Final Decree for Divorce and Order for Hearing on January 8, 2007" (hereinafter, the "Final Decree") was entered on March 2, 2007, and ordered Father to pay child support of $1,200.00 per month at a rate of $600.00 per pay period by wage assignment. Further, the Order awarded alimony *in futuro* to Mother in the amount of $500.00, to be paid at a rate of $250.00 per pay period by wage assignment. This award was based upon the trial court's findings that there was relative economic disadvantage, and that rehabilitation was not feasible with reasonable efforts. The trial court ordered Father to begin intensive training in the use of the equipment needed for the older child, and to purchase certain equipment for the child's overnight visits. Additionally, the trial court rendered judgment against Father for child support arrearages in the amount of $4,756.00. The trial court also awarded Mother $15,000.00 in attorney fees as *alimony in solido*.

Father appeals. On June 5, 2007, this Court entered an Order requiring Father to show cause why this appeal should not be dismissed for failure to file a timely brief. On June 11, 2007, Father submitted his brief to the Clerk of this Court for filing and submitted no further

response to this Court. On June 20, 2007, this Court entered an Order requiring Father to show cause why this Court should accept his late filed brief. On July 20, 2007, this Court entered an Order dismissing Father's appeal because Father failed to respond to our June 20, 2007 Order. Father filed a Motion to Reconsider the Order Dismissing the Appeal on July 23, 2007. On July 26, 2007, this Court entered an Order Reinstating the Appeal.

We now turn to the issues raised:

## Issues on Appeal

In Father's brief, he recites his issues in paragraph form. Upon review of the brief, we restate the pertinent issues as follows:

1.  Whether the trial court erred when it awarded alimony to Mother;

2.  Whether the trial court erred when it granted an upward deviation in child support;

3.  Whether the trial court erred when it calculated Father's income, his child support obligation, Mother's income, and her employability; and,

4.  Whether the trial court abused its discretion when it awarded attorneys' fees and child support arrearages to Mother.

## Standard of Review

This Court reviews findings of fact made by a trial court sitting without a jury under a *de novo* standard with a presumption of correctness for those findings, unless the preponderance of the evidence is otherwise. **Tenn. R. App. 13(d)** (2007). This Court reviews a trial court's conclusions of law *de novo* with no presumption of correctness. **Union Carbide Corp. v. Huddleston**, 854 S.W.2d 87, 91 (Tenn. 1993) (citing **Estate of Adkins v. White Consol. Indus., Inc.**, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989).

## Discussion

*Alimony*

The first issue presented for our review is whether the trial court erred when it awarded alimony *in futuro* in the amount of $500.00 per month to Mother. The trial court has broad discretion concerning the amount, type, and duration of spousal support based on the particular

facts involved. ***Bratton v. Bratton***, 136 S.W.3d 595, 605 (Tenn. 2004). The trial court's decision is entitled to great weight on appeal and will not be disturbed absent a showing of abuse of discretion. ***Bogan v. Bogan***, 60 S.W.3d 721, 727 (Tenn. 2001)***.*** Accordingly, we prefer not to alter an award of alimony "unless it is not supported by the evidence or is contrary to the public policy embodied in the applicable statutes." ***Brown v. Brown***, 913 S.W.2d 163, 169 (Tenn. Ct. App. 1994) (citing ***Gilliam v. Gilliam***, 776 S.W.2d 81, 86 (Tenn. Ct. App. 1988); ***Ingram v. Ingram***, 721 S.W.2d 262, 264 (Tenn. Ct. App. 1986)).

Whether an alimony award is appropriate is determined on a case-by-case basis. ***Robertson v. Robertson***, 76 S.W.3d 337, 341 (Tenn. 2002). While the alimony analysis is factually driven, the court must also balance several statutory factors including those enumerated in section T.C.A. § 36-5-121(i)(2006) (formerly T.C.A. § 36-5-101(d)(1)). Those factors are as follows:

> (i) In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:
>
> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
>
> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
>
> (3) The duration of the marriage;
>
> (4) The age and mental condition of each party;
>
> (5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
>
> (6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;
>
> (7) The separate assets of each party, both real and personal, tangible and intangible;
>
> (8) The provisions made with regard to the marital property, as defined in § 36-4-121;
>
> (9) The standard of living of the parties established during the marriage;
>
> (10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and

homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

**T.C.A. § 36-5-121(i)**(2006).

Although all statutory factors listed above are important and will be considered by the trial court, "need and the ability to pay are the critical factors in setting the amount of an alimony award." *Koja v. Koja,* 42 S.W.3d 94, 100 (Tenn. Ct. App. 2000).

Section 36-5-121(i) reflects a preference for temporary support, or rehabilitative alimony, as opposed to long-term support, or alimony *in futuro*. *See* **T.C.A. § 36-5-121(i)**. "The purpose of rehabilitative alimony is to enable the disadvantaged spouse to acquire additional job skills, education, or training that will enable him or her to be more self-sufficient." *Kinard v. Kinard,* 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998) (citing *Smith v. Smith,* 912 S.W.2d 155, 160 (Tenn. Ct. App. 1995). In contrast, the purpose of alimony *in futuro* is to provide support to an economically disadvantaged spouse who is unable to achieve some degree of self-sufficiency. *See Loria v. Loria,* 952 S.W.2d 836, 838 (Tenn. Ct. App. 1997). A court may grant alimony *in futuro* only where rehabilitation of the economically disadvantaged spouse is not feasible. *See Aaron v. Aaron,* 909 S.W.2d 408, 410 (Tenn. 1995); *Self v. Self,* 861 S.W.2d 360, 361 (Tenn. 1993).

In the case at bar, Father argues that the trial court should not have awarded Mother any form of alimony. Father argues that Mother is gainfully employed an average of two and a half (2 ½ ) days per week and is not a disadvantaged spouse. Based upon the evidence presented at trial, we conclude that an award of alimony *in futuro* is appropriate in this case. There is a clear disparity between the parties' earning capacities. Mother is limited in her ability to work and earn due to the constant care required for H.L.V. Furthermore, we cannot overlook the tangible and intangible contributions that Mother made as a homemaker during the marriage, and the fault of Father in this case. Accordingly, we hold that the trial court did not err in awarding alimony *in futuro*, and we, therefore, affirm the trial court's decision awarding Mother's alimony *in futuro* in the amount of $500.00 per month until her death or remarriage.

*Child Support*

The second issue presented for our review is whether the trial court erred in granting an upward deviation from the child support guidelines in the amount of $500.00. It is well settled that the trial court shall apply, as a rebuttable presumption, the child support guidelines. **T. C. A. § 36-5-101(e)(1)(A)** (2006).[1] However, if the trial court finds that evidence is sufficient to rebut this presumption, the trial court must make a written finding that the application of the child support guidelines would be unjust or inappropriate in the particular case and that the best interests of the child(ren) would be served with an upward deviation in child support.[2]

In reviewing an upward deviation from the child support guidelines, this Court applies the deferential "abuse of discretion" standard, while keeping the applicable statutes and regulations in mind. **State ex rel. Anderson v. Taylor,** No. M2001-02193-COA-R3-CV**,** 2003 WL 21480087, at *4 (Tenn. Ct. App. June 27, 2003). An abuse of discretion occurs when the trial court deviates from the statutes or guidelines without an adequate evidentiary foundation. **Id.** (citing **State ex rel. Stewart v. Lockett,** No. M2001-00809-COA-R3-JV, 2002 WL 121636, at *3 (Tenn. Ct. App. Jan. 30, 2002)).

---

[1]**T. C. A. § 36-5-101 (e)(1)(A)** (2006) provides:

> In making the court's determination concerning the amount of support of any minor child or children of the parties, the court shall apply, as a rebuttable presumption, the child support guidelines, as provided in this subsection (e). If the court finds that evidence is sufficient to rebut this presumption, the court shall make a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child or children, or the equity between the parties. Findings that the application of the guidelines would be unjust or inappropriate shall state the amount of support that would have been ordered under the child support guidelines and a justification for the variance from the guidelines.

[2]**Tennessee Child Support Guideline § 1240-2-4-.01(1)(e)** (2006) provides:

(e) Federal law and regulations further provide that the amount of child support mandated by the Guidelines may be rebutted if the tribunal setting or modifying support includes, in writing, in the order:

> 1. The reasons the tribunal deviated from the presumptive amount of child support that would have been paid pursuant to the Guidelines;
> 2. The amount of child support that would have been required under the Guidelines if the presumptive amount had not been rebutted; and
> 3. A finding by the tribunal that states how, in its determination,
>> (i) Application of the Guidelines would be unjust or inappropriate in the particular case before the tribunal; and
>> (ii) The best interests of the child or children who are subject to the support award determination are served by deviation from the presumptive guideline amount.

Father argues that the trial court made no written "findings of fact . . . regarding any upward deviation . . . ." Upon reading the trial court's Final Decree, we disagree. The trial court's Final Decree includes the following findings of fact related to this issue:

(5) That the parties' minor child [H.L.V.] is a special needs child as a result of being born eleven weeks prematurely and had neonatal meningitis, which resulted in hydrocephalus.

(6) That the parties' minor child [H.L.V.] requires care for the following:

a. She is not ambulatory and receives therapy directed toward the prevention of contractures from her spasticity.
b. She has eating issues and is fed through a gastrostomy tube.
c. She has seizures and is maintained by a nebulizer, Hoyer lift, and an apnea monitor at nighttime.
d. She has a ventriculoperitoneal shunt which presents risk unless vigilantly monitored.
e. She requires twenty-four (24) hour care, with special training in the use of the above-noted equipment, as well as the necessity of a special car seat and various types of therapy.

. . . .

(43) That the above-noted [child support] calculation will result in a presumptive child support obligation for [Father] in the amount of $700.00 per month (the child support work sheets were provided for counsel's review).

(44) That Tennessee Code Annotated § 36-5-101(k)(2) authorizes the Court to order child support to continue beyond the date the child reaches their majority when the child is severely disabled and living under the care and supervision of a parent as is the case in this matter.

. . . .

(47) That the proof in this case is overwhelming as to the intensive care needs of [the minor child] and the inadequacy of the support of the guidelines.

-7-

. . . .

> (52) That this court finds that it will deviate upward because of the intense needs of the [Mother], who is the primary residential parent, for the support of these two children and child support is set at $1,200 per month, to be paid at a rate of $600.00 per pay period by way of wage assignment. . . .

Our review of the record reveals that an abundance of information presented at trial illustrates the need for an upward deviation in child support. Based on the extraordinary needs of the parties' disabled minor child, we hold that the trial court did not err in ordering an upward deviation in child support. Because the trial court provided its reasons for the upward deviation in writing, we affirm this decision.

*Income and Child Support Calculations*

The third issue presented for our review is whether the trial court properly calculated Father's income, his child support obligation, Mother's maximum employability per week, and her use of her gross income. Father argues that the trial court improperly calculated Mother's income and improperly used her net income (as opposed to her gross income) when calculating child support. Father bases this argument off of a letter of employment introduced by Mother at trial. This letter, dated November 9, 2006, states that "[Mother] has accepted a temporary dental hygiene position in our office effective immediately. She will be working two to three days a week. Her daily salary, after deductions, will be $220.00. There are no benefits offered with this position . . . "

The trial court's findings are presumed correct, "unless the preponderance of the evidence is otherwise." **Tenn. R. App. P 13(d)**. No presumption of correctness attaches to the trial court's conclusions of law. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). In setting child support, courts look to the guidelines promulgated by the Tennessee Department of Human Services. According to the guideline, the "[g]ross income of each parent shall be determined in the process of setting the presumptive child support order. . . ." **Child Support Guideline § 1240-2-4.04(3)(a)(1)** (2006).

It appears from the record that Mother only presented her daily *net* income, not gross. In calculating the appropriate child support, the trial court used Father's gross income of $50,000.00 and calculated Mother's income at $1,892.00 ($220 per day x 2 days per week = $440.00 per week x 4.3 weeks per month). The letter verifying her employment indicates that her daily salary is $220.00 *after* deductions. Father also argues that the trial court improperly averaged the monthly income rate earned by Mother. Father alleges that, because the letter indicates that Mother will be working 2-3 days per week, a multiplier of two and a half (2 ½ ) working days per week rather than two (2) should be used when calculating Mother's monthly income. Our review of the record reveals that, for the past year, Mother has actually averaged four (4) days of work

per month, or one (1) day per week. This average is based upon her income for the last year. The Final Decree does not indicate why the trial court chose to charge Mother with two (2) days per week rather than one (1), but we are mindful that the trial court is in the best position to assess the credibility of the witnesses. Its determinations of credibility are entitled to great weight on appeal and will not be reversed absent clear evidence to the contrary. ***Jones v. Garrett,*** 92 S.W.3d 835, 838 (Tenn.2002); ***Massengale v. Massengale,*** 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995).

Father's argument regarding the calculation of Mother's gross income has merit, but the record does not support his argument concerning the amount of days that Mother actually works. In its calculation, the trial court should use Mother's gross income and determine whether Mother actually works one (1) or two (2) days per week. While this error will probably not substantially change the base child support award, we nonetheless remand the matter to the trial court for further proceedings consistent with this opinion.

*Past Due Support Payments & Attorney's Fees*

Finally, Father argues that the trial court erred in awarding additional monies for his breach in the Mediation Agreement, and for awarding Mother's attorney's fees. The trial court found that Father unilaterally breached the parties' Mediation Agreement by failing to pay child support in the amount listed in that agreement. The trial court awarded Mother $4,756.00 for child support arrearages and $15,000.00 for attorney's fees.

As noted above, on October 24, 2005, the parties signed document entitled "Jan M. And Danny Vaughn Mediation." The Mediation Agreement was never an order of the trial court. The first page addresses the parties' parenting time and the second page addresses child support. Both pages are signed by the parties, and, at trial, neither party disputed the authenticity of the document or their signatures. Among other things, the Mediation Agreement obligated Father to pay $2,800.00 per month to Mother at a rate of $1,400.00 on the 1st and the 15th of each month, starting November 1, 2005. The page regarding parenting time states that "[t]his will be reviewed six months from the date of this agreement." The parties did not review the agreement after the six (6) month period, and Father continued to make the monthly $2,800.00 support payments until October of 2006. From October 2006 until January 2007, Father made sporadic payments, none of which were near the $2,800.00 monthly amount.

Father alleges that the parties signed a Mediation Agreement which expired after six (6) months; thus, he contends that he was not obligated to pay child support after the six (6) month term. Additionally, Father argues that Mother deliberately extended the amount of time from the date the agreement allegedly expired to the trial court's hearing (approximately nine (9) months). Because of her actions, Father argues that he should not be responsible for paying for the months following the expiration of the Mediation Agreement. In its Final Decree, the trial court treated

the parties' Mediation Agreement to be a valid and enforceable contract up to the date of the Final Decree. The trial court did not address Father's argument regarding the delay.

Until approved by the courts, a mediated agreement is essentially contractual in nature. ***Ledbetter v. Ledbetter***, 163 S.W.3d 681, 685 (Tenn. 2005). It is well settled in Tennessee that the interpretation of a written contract is a matter of law, and thus, no presumption of correctness in its interpretation exists. ***NSA DBA Benefit Plan, v. Connecticut Gen. Life Ins. Co.,*** 968 S.W.2d 791, 795-96 (Tenn. Ct. App. 1997).

While we find that the contract was valid at one time, the term of the contract is at issue. Our review is governed by well-settled principles on this issue. "The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern." ***Tomes v. Tomes,*** No. M2006-01799-COA-R3-CV, 2007 WL 4224641, at *2 -3 (Tenn. Ct. App. Nov. 29, 2007) *(citing **Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.,*** 78 S.W.3d 885, 890 (Tenn.2002)). In "resolving disputes concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language." ***Planters Gin Co.***, 78 S.W.3d at 889-90 (*citing **Guiliano v. Cleo, Inc.,*** 995 S.W.2d 88, 95 (Tenn. 1999)). This determination of the intention of the parties is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide. ***Id.*** (citations omitted).

A court's initial task in construing a contract is to determine whether the language of the contract is ambiguous. Once found to be ambiguous, a court applies established rules of construction to determine the parties' intent. ***Id.*** All provisions of a contract should be construed in harmony with each other to promote consistency and avoid repugnancy among the various contract provisions. ***Tomes,*** 2007 WL 4224641, at *2 -3 (citing ***City of Cookeville, Tn. v. Cookeville Regional Med. Ctr.,*** 126 S.W.3d 897, 904 (Tenn. 2004)). The interpretation of an agreement is not dependent on any single provision, but upon the entire body of the contract and the legal effect of it as a whole. ***Aetna Cas. & Surety Co. v. Woods,*** 565 S.W.2d 861, 864 (Tenn. 1978).

In the Mediation Agreement, the first page, entitled "Parenting Time," states that "[t]his will be reviewed six months from the date of this agreement" and addresses parental visitation only for the Thanksgiving, Christmas and Easter holidays. The second page, entitled "Child Support," states that "[n]o Bethany [Father's paramour] in the presence of the children during this 6 months period of time." Based on the entire body of the contract and the language related to the term, we find that the parties intended the Mediation Agreement to control for a term of six (6) months. The first page of the agreement only addresses major holidays (Thanksgiving, Christmas, and Easter) within the initial six (6) month time frame, from October 24, 2005 to March 24, 2006. Further, the sentence on the second page, "[n]o Bethany in the presence of the children during ***this*** 6 months period of time" (emphasis added) indicates that Bethany was not to be in the presence of the children during the contract period.

-10-

Because we find that the Mediation Agreement's term was six (6) months from the date of signing, the next issue is whether Father's continued payment of the $2,800.00 for the next five (5) months has any legal significance. It is well-settled that "if the parties to an expired agreement with a definite term continue to perform as if the agreement were still in effect, it is presumed that they are serving under a new contract with the same terms as the old. *Delzell v. Pope*, 294 S.W.2d 690, 694 (Tenn.1956); *see* 17A **Am. Jur. 2d** <u>Contracts</u> **§ 589** (2007) **(**stating that "[w]here an agreement expires by its terms and, without more, the parties continue to perform as before, an implication arises that they have mutually assented to a new contract containing the same provisions as the old; and ordinarily, the existence of such a contract is determined by the "objective" test, that is, whether a reasonable person would think the parties intended to make such a new binding agreement. . . .").

For five (5) full months past the original six (6) month contract term, Father continued to pay $2,800.00 per month to Mother, and Mother accepted each payment. Nothing in the record indicates that either party made efforts to review the contract at the end of the original six (6) months per the language of the Mediation Agreement. We note that Father paid the full monthly amount, for an amount of time almost equal to the original Mediation Agreement term, and Mother consistently accepted his payment. We hold that, by their actions, the parties exhibited an intent to create a new contract containing the same provisions as the old, including the term. Therefore, Father's obligation to pay $2,800.00 ceased on October 24, 2006. In October of 2006, Father was obligated to make a payment of $1,400.00 on the 1st and the 15th. In fact, Father paid only $1,800.00; so he is still obligated to pay Mother an additional $1,000.00 for October.

Although Father's contractual obligation to pay Mother $2,800.00 ceased on October 24, 2006, he is not entirely relieved from paying child support. The Tennessee Child Support Guidelines state that **"**in cases in which initial support is being set, a judgment must be entered to include an amount of monthly support due up to the date that an order for current support is entered." **Tennessee Child Support Guidelines § 1240-2-4-.06** (2006)**.** In the instant case, the Final Decree was entered on March 2, 2007. Hence, we find that, for the months of November of 2006 to March of 2007, Father owes Mother child support arrearages in the amount of his current monthly support obligation multiplied by five (5) months. The record reveals that Father paid $1,200.00 in November of 2006, $622.00 in December of 2006, and $622 in January of 2007. These amounts, and any other amounts that Father paid prior to the Final Decree, should be credited toward his arrearage amount. As we discussed *supra*, Father's current child support obligation needs to be recalculated, taking into consideration Mother's *gross* income and her average work days per month. While we favor the conservation of the judicial resources, we do not have the necessary information to accurately calculate Father's child support payments or Father's child support arrearages. Father's argument regarding the delay in the court proceedings is tenuous at best, and we find no evidence in the record that supports this contention. Accordingly, we vacate the child support arrearage award and remand the case to the trial court for the proper calculation of the child support payments and Father's arrearages.

Father also argues that the trial court erred when it awarded Mother $15,000.00 for her attorney's fees. In Tennessee, it is well-settled that the allowance of an award of attorneys' fees is a matter largely within the sound discretion of the trial court. ***Aaron v. Aaron,*** 909 S.W.2d 408, 411 (Tenn.1995); ***Byrd v. Byrd,*** 184 S.W.3d 686, 693 (Tenn.Ct.App.2005); ***Wilder v. Wilder,*** 66 S.W.3d 892, 894 (Tenn.Ct.App.2001). On appeal, this Court will interfere with such an award only when there is an abuse of discretion. ***Byrd,*** 184 S.W.3d at 693; ***Threadgill v. Threadgill,*** 740 S.W.2d 419, 426 (Tenn.Ct.App.1987). This is an especially deferential standard. The appellant bears the burden of demonstrating an abuse of discretion by showing that "the evidence preponderates against the award, and a manifest injustice will be done if the [t]rial [c]ourt's decision is allowed to stand." ***Wilder,*** 66 S.W.3d at 894 (citing ***Long v. Long,*** 957 S.W.2d 825 (Tenn.Ct.App.1997)). Although Father raises the issue of attorneys' fees, his brief is devoid of how the grant of attorneys' fees creates a manifest injustice or how the evidence preponderates against the award. Accordingly, we find that Father does not meet his burden of demonstrating an abuse of discretion. We affirm the trial court's decision to award Mother $15,000.00 for her attorney's fees.

## Conclusion

The judgment of the of the trial court is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with this Opinion. Costs of this appeal are assessed to Appellant, William Daniel Vaughn, and his surety.

_____ W. FRANK CRAWFORD, JUDGE