IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
May 7, 2008 Session

## STEVEN WATERS ET AL. V. REAGAN FARR

**Appeal by Permission from the Court of Appeals, Eastern Section**
**Chancery Court for Loudon County**
**No. 10710     Frank V. Williams, III, Chancellor**

**No. E2006-02225-SC-R11-CV - Filed July 24, 2009**

WILLIAM C. KOCH, JR., J., concurring in part and dissenting in part.

The Court today invalidates the Unauthorized Substances Tax on the ground that it exceeds the General Assembly's taxing power under Article II, Section 28 of the Tennessee Constitution. The Court reaches this conclusion despite the precedents requiring us to interpret statutes in a manner that sustains, rather than defeats, their constitutionality. Even though I concur with the Court's conclusions that the Unauthorized Substances Tax does not run afoul of the state and federal constitutional prohibitions against double jeopardy and self-incrimination and that it is consistent with the requirements of due process, I cannot concur with its decision that this tax cannot be imposed in a constitutional manner on persons who possess significant quantities of illegal drugs for the purpose of resale.

### I.

The illegal drug trade is a hydra-headed monster that preys on our society. It destroys individual lives and tears families apart. It undermines our economic well-being by impairing productivity, requiring taxpayers to bear the expense of treatment and social services for the drug abusers and their families, and forcing the public to bear the collateral expenses of drug-related crimes. The "war on drugs" currently being waged by many federal, state, and local law enforcement agencies has resulted in dramatically increased expenditures for additional law enforcement personnel, prosecutors and public defenders, the courts, and correction facilities to house persons convicted of drug-related crimes.

The question of how society should counteract the harmful effects of illegal drugs and deter those engaged in the illegal drug trade presents complex policy issues that are particularly suited for legislative debate and action. With regard to merchants and peddlers of illegal drugs, the Tennessee

General Assembly, like Congress and other state legislatures, has traditionally emphasized deterrence through criminal prosecution and incarceration.[1]

More recently, however, the General Assembly has created additional tools to address the illegal drug trade. It has empowered law enforcement authorities to seize and confiscate real and personal property used in the illegal drug trade or obtained with proceeds from the illegal drug trade and then to forfeit this property and to use it or the proceeds from its sale to defray the costs of drug-related law enforcement activities.[2] It enacted the Drug Court Treatment Act of 2003 to facilitate the creation of specialized courts for the purpose of reducing the incidence of drug use, drug addiction, and crimes committed as a result of drug use and addiction.[3] In 2005, the General Assembly enacted the Drug Dealer Liability Act to provide persons injured by illegal drugs with a civil cause of action for damages against persons who knowingly participate in the illegal drug market in Tennessee.[4]

The General Assembly has recognized that illegal drugs are products that drive many enormous, illegal underground business enterprises operating in Tennessee and elsewhere.[5] It has

---

[1] Tenn. Code Ann. § 39-17-417(b)-(j) (Supp. 2008) prescribes the fines and sentences for persons convicted of manufacturing, delivering, selling, or possessing illegal drugs for the purpose of manufacturing, delivering, or sale. Possessing 0.5 grams of cocaine with intent to sell is a Class B felony that carries with it a fine of up to $100,000. Tenn. Code Ann. § 39-17-417(c)(1). Possessing 26 grams of cocaine with intent to sell is a Class B felony that carries with it a fine of up to $200,000. Tenn. Code Ann. § 39-17-417(i)(5). Possessing 300 or more grams of cocaine is a Class A felony that carries with it a fine of up to $200,000. Tenn. Code Ann. § 39-17-417(j)(5). Tenn. Code Ann. § 39-17-418 (2006) prescribes the fines and sentences for persons who are convicted of simple possession or the casual exchange of controlled substances.

[2] *See* Tenn. Code Ann. §§ 53-11-201, -204 (2008) and Tenn. Code Ann. §§ 53-11-451, -452 (2008).

[3] *See* Tenn. Code Ann. §§ 16-22-101, -114 (Supp. 2008).

[4] *See* Tenn. Code Ann. § 29-38-101, -116 (Supp. 2008).

[5] In 2005, the United Nations estimated that the drug trade generates more than $300 billion in retail sales which exceeds the gross domestic product of 88% of the world's countries. It also estimated that the United States accounted for 44% of all retail drug sales. United Nations Office of Drugs and Crime, World Drug Report 2005 § 2.2, at 127-28, *available at* http://www.unodc.org/pdf/WDR_2005/volume_1_web.pdf (last visited June 9, 2009) ("World Drug Report"). Illegal drugs become more profitable as they move from producers to consumers. World Drug Report § 2.2, at 127. In the drug trade, the "[t]otal producer income is, on average, 4% of the final retail value" with "the highest profits [being] made between the wholesale and retail level." World Drug Report § 2.2, at 130.

The increase in the price of illegal drugs from the wholesale to the retail level holds true in Tennessee. In 2007, the United States Department of Justice reported that the wholesale price of powder cocaine in December 2006 in Knoxville was between $20,000 and $24,000 per kilogram which equates to $20 to $24 per gram. U.S. Dep't of Justice, National Illicit Drug Prices: December 2006, at 10 tbl. 3 (Feb. 2007), available at http://www.methadonesupport.org/DrugPrices.pdf (last visited June 10, 2009) ("National Illicit Drug Prices: December 2006"). This report also stated that the midlevel price of powder cocaine in Knoxville was between $28 and $53 per gram, and that the retail street price of powder cocaine was $100 per gram. National Illicit Drug Prices: December 2006, at 10 tbl. 3. Thus, without considering either the other costs of engaging in this illegal business or the additional profit derived from diluting the purity of the drug to increase the amount sold, a drug dealer purchasing a kilogram of powder cocaine at wholesale could expect a

(continued...)

also recognized that the peddlers and merchants of illegal drugs have long been able to operate their illegal businesses without paying taxes, despite the significant financial burdens their enterprises impose on the State and local governments. Accordingly, in 2004, the General Assembly provided the State with another weapon against illegal drug trafficking when it enacted the Unauthorized Substances Tax.[6] The purpose of this tax was to end the tax-exempt status of merchants and peddlers of illegal drugs and to require them to pay a tax on their profits.

The Unauthorized Substances Tax legislation was patterned after similar legislation that had already been enacted in other states. As a result of the General Assembly's action, Tennessee joined nineteen other states that impose a tax on the possession or sale of illegal drugs.[7] Some earlier versions of other states' statutes taxing illegal drugs had failed to adequately safeguard against self-incrimination or had run afoul of protections against double jeopardy. However, through the judicial testing process, a coherent understanding of a constitutionally permissible approach to the taxation of illegal drugs developed, and the statutes were amended and refined. At present, the Iowa,[8] Kansas,[9] Kentucky,[10] Minnesota,[11] Nebraska,[12] North Carolina,[13] and South Carolina[14] Supreme

---

[5](...continued)
profit of between $76,000 and $80,000 from selling powder cocaine in Knoxville in 2006.

[6] Act of May 20, 2004, ch. 803, 2004 Tenn. Pub. Acts 1840 (codified at Tenn. Code Ann. §§ 67-4-2801, -2811 (2006 & Supp. 2008)). These statutes took effect on January 1, 2005.

[7] The states include Alabama (Ala. Code § 40-17A-1 through § 40-17A-16 (2003)), Connecticut (Conn. Gen. Stat. § 12-650 through § 12-660 (2000)), Georgia (Ga. Code Ann. § 48-15-1 through § 48-15-11 (2005)), Idaho (Idaho Code Ann. § 63-4201 through § 63-4211 (2007)), Indiana (Ind. Code § 6-7-3-1 through § 6-7-3-20 (2007)), Iowa (Iowa Code § 453B.1 through § 453B.16 (2006)), Kansas (Kan. Stat. Ann. § 79-5201 through § 79-5212 (1997 & Supp. 2007)), Kentucky (Ky. Rev. Stat. Ann. § 138.870 through § 138.889 (2006)), Louisiana (La. Rev. Stat. Ann. § 47:2601 through § 47:2610 (Supp. 2008)), Massachusetts (Mass. Gen. Laws ch. 64K, § 1 through § 14 (2001)), Minnesota (Minn. Stat. § 297D.01 through § 297D.13 (2007)), Nebraska (Neb. Rev. Stat. § 77-4301 through § 77-4316 (2003)), Nevada (Nev. Rev. Stat. § 372A.010 through § 372A.130 (2007 & Supp. 2007)), North Carolina (N.C. Gen. Stat. § 105-113.105 through § 105-113.113 (2007)), Oklahoma (Okla. Stat. tit. 68, § 450.1 through § 450.9 (2001)), Rhode Island (R.I. Gen. Laws § 44-49-1 through § 44-49-16 (2005)), South Carolina (S.C. Code Ann. § 12-21-5010 through § 12-21-6050 (2000)), and Texas (Tex. Tax Code Ann. § 159.001 through § 159.301 (2008)). Michigan also taxes the sale of drugs but does so through its general sales tax. *Greer v. Dep't of Treasury*, 377 N.W.2d 836, 837-39 (Mich. Ct. App. 1985).

[8] *State v. Baehler*, 604 N.W.2d 601 (Iowa 1999); *State v. Lange*, 531 N.W.2d 108 (Iowa 1995).

[9] *State v. Jensen*, 915 P.2d 109 (Kan. 1996); *State v. Gulledge*, 896 P.2d 378 (Kan. 1995).

[10] *Commonwealth v. Bird*, 979 S.W.2d 915 (Ky. 1998).

[11] *Sisson v. Triplett*, 428 N.W.2d 565 (Minn. 1988).

[12] *State v. Stubblefield*, 543 N.W.2d 743 (Neb. 1996); *State v. Garza*, 496 N.W.2d 448 (Neb. 1993).

[13] *N.C. School Bds. Ass'n v. Moore*, 614 S.E.2d 504 (N.C. 2005).

[14] *McMullin v. S.C. Dep't of Revenue and Taxation*, 469 S.E.2d 600 (S.C. 1996).

Courts, the Oklahoma Court of Criminal Appeals,[15] and the Alabama Court of Civil Appeals[16] have all upheld their state's tax on illegal drugs against various constitutional challenges. Tennessee's Unauthorized Substances Tax reflects the refinements resulting from the litigation involving the constitutionality of similar statutes in other states.

## II.

The Court today concludes that the Unauthorized Substances Tax, a statute passed unanimously by the General Assembly, is facially unconstitutional. A decision to declare a statute facially unconstitutional requires extraordinary caution to avoid short-circuiting the democratic process by preventing laws embodying the will of the people, as expressed through their elected representatives, from being implemented in a manner consistent with the federal and state constitutions. *See Wash. State Grange v. Wash. State Repub. Party*, 552 U.S. ___, ___, 128 S. Ct. 1184, 1191 (2008). While this Court should never hesitate to perform its assigned role as the constitutional check on the actions of the other branches of government, we should maintain appropriate respect for the breathing room necessary for a representative democracy to thrive.[17] This respect is reflected in the rules of construction that this Court has traditionally followed when adjudicating constitutional challenges to statutes.

Article II, Section 3 of the Tennessee Constitution vests all legislative power in the General Assembly. Included in this power, and explicitly recognized in Article II, Section 28, is the power of taxation. As a constitutional matter, the power to levy taxes has been assigned exclusively to the General Assembly. *Sears, Roebuck & Co. v. Woods*, 708 S.W.2d 374, 383 (Tenn. 1986). Accordingly, the General Assembly's exercise of its legislative power, including the power of taxation, is limited only by the state and federal constitutions. *Perry v. Lawrence County Election Comm'n*, 219 Tenn. 548, 551, 411 S.W.2d 538, 539 (1967); *Williams v. Carr*, 218 Tenn. 564, 578, 404 S.W.2d 522, 529 (1966); *Evans v. McCabe*, 164 Tenn. 672, 675, 52 S.W.2d 159, 160 (1930).

Because the Tennessee Constitution expressly assigns all legislative power to the General Assembly, the doctrine of separation of powers, reflected in Article II, Section 2 of the Tennessee Constitution, constrains this Court's power to invalidate the General Assembly's legislative actions. *Peay v. Nolan*, 157 Tenn. 222, 233-34, 7 S.W.2d 815, 818 (1928). We must respect the General Assembly's exercise of its broad legislative discretion in all matters, including matters of taxation. *Logan's Supermarkets, Inc. v. Atkins*, 202 Tenn. 438, 442, 304 S.W.2d 628, 630 (1957); *Adams v. Mayor & Aldermen of Somerville*, 39 Tenn. (2 Head) 363, 366-67 (1859). Accordingly, we must refrain from invalidating a statute on constitutional grounds unless it is clearly and plainly unconstitutional. *Perry v. Lawrence County Election Comm'n*, 219 Tenn. at 551, 411 S.W.2d at

---

[15] *White v. State*, 900 P.2d 982 (Okla. Crim. App. 1995); *Hill v. State*, 898 P.2d 155 (Okla. Crim. App. 1995). The Oklahoma Court of Criminal Appeals is Oklahoma's court of last resort for criminal matters. John J. Watkins, *Division of Labor Between Arkansas's Appellate Courts*, 17 U. Ark. Little Rock L.J. 177, 210 n.152 (1995).

[16] *Milner v. State*, 658 So.2d 500 (Ala. Civ. App. 1994).

[17] *See* Alexander M. Bickel, *The Least Dangerous Branch: The Supreme Court at the Bar of Politics* 16-18 (1962).

539; *Holly v. City of Elizabethton*, 193 Tenn. 46, 53, 241 S.W.2d 1001, 1004-05 (1951); *Koen v. State*, 162 Tenn. 573, 582, 39 S.W.2d 283, 285 (1931).

When this Court is asked to address the constitutionality of a statute, we must begin with the strong presumption that the challenged statute is constitutional. *McCarver v. Ins. Co. of State of Penn.*, 208 S.W.3d 380, 384 (Tenn. 2006); *Lynch v. City of Jellico*, 205 S.W.3d 384, 390 (Tenn. 2006); *State Bank v. Cooper*, 10 Tenn. (2 Yer.) 599, 622-23 (1831) (Kennedy, J.). This presumption places a heavy burden on the person challenging the statute. *Gallaher v. Elam*, 104 S.W.3d 455, 459-60 (Tenn. 2003); *In re Adoption of E.N.R.*, 42 S.W.3d 26, 31 (Tenn. 2001); *State ex rel. Maner v. Leech*, 588 S.W.2d 534, 540 (Tenn. 1979).

Consistent with the presumption of a statute's validity, we must resolve every doubt in favor of a statute's constitutionality. *State v. Pickett*, 211 S.W.3d 696, 700 (Tenn. 2007); *Bailey v. County of Shelby*, 188 S.W.3d 539, 543 (Tenn. 2006). Because we must uphold a statute whenever possible, *State v. Pickett*, 211 S.W.3d at 700; *Unicoi County v. Frye*, 197 Tenn. 117, 121, 270 S.W.2d 381, 383 (1954), we must adopt any reasonable construction of a statute that will preserve the statute and avoid constitutional conflict. *Jordan v. Knox County*, 213 S.W.3d 751, 780-81 (Tenn. 2007); *State v. Taylor*, 70 S.W.3d 717, 721 (Tenn. 2002). As the United States Supreme Court noted over seventy years ago, "[t]he cardinal principle of statutory construction is to save and not to destroy." *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 30 (1937).

A challenge to a statute's constitutionality does not give the Court a license to second-guess the General Assembly's policy judgments or to import our own personal views into the statutory text. *See Draper v. Westerfield*, 181 S.W.3d 283, 290 (Tenn. 2005); *State v. Goodman*, 90 S.W.3d 557, 565 (Tenn. 2002). It is not our prerogative to inquire into the motives of the General Assembly. *Cosmopolitan Life Ins. Co. v. Northington*, 201 Tenn. 541, 558, 300 S.W.2d 911, 918 (1957). Nor may we review the statute's wisdom,[18] expediency,[19] reasonableness,[20] or desirability.[21] These are matters entrusted to the electorate, not the courts. *See State ex rel. Robinson v. Lindsay*, 103 Tenn. 625, 640, 53 S.W. 950, 954 (1899); *Henley v. State*, 98 Tenn. 665, 679-82, 41 S.W. 352, 354-55 (1897); *State ex rel. Coleman v. Campbell*, 3 Tenn. Cas. (Shannon) 355, 366 (1875).

### III.

Both this Court and the General Assembly have developed jurisprudential principles applicable to constitutional challenges. These time-tested principles assure that the proper parties are joined, that the issues are properly focused and clearly drawn, and that the State has a full and

---

[18] *Green v. Johnson*, 249 S.W.3d 313, 318-19 (Tenn. 2008); *Hoover Motor Express Co. v. Hammer*, 201 Tenn. 270, 275, 298 S.W.2d 724, 726 (1957).

[19] *Kirk v. Olgiati*, 203 Tenn. 1, 7, 308 S.W.2d 471, 474 (1957); *Estep v. State*, 183 Tenn. 325, 335, 192 S.W.2d 706, 710 (1946).

[20] *Draper v. Westerfield*, 181 S.W.3d at 290; *Wausau Ins. Co. v. Dorsett*, 172 S.W.3d 538, 543 (Tenn. 2005).

[21] *Nashville Mobilphone Co. v. Atkins*, 536 S.W.2d 335, 340 (Tenn. 1976).

fair opportunity to defend the constitutionality of the challenged statute. Many of these principles have not been followed in this case.

**A.**

One cardinal principle of appellate practice is that a party who fails to raise an issue in the trial court waives its right to raise that issue on appeal. *In re M.L.P.*, 281 S.W.3d 387, 394 (Tenn. 2009); *Dye v. Whitco Corp.*, 216 S.W.3d 317, 321 (Tenn. 2007); *Cookeville Reg'l Med. Ctr. v. Humphrey*, 126 S.W.3d 897, 905-06 (Tenn. 2004); *Black v. Blount*, 938 S.W.2d 394, 403 (Tenn. 1996). This Court has expressly applied this principle in cases involving challenges to the constitutionality of a statute by holding that constitutional issues must be first raised in the trial court "unless the statute involved is so obviously unconstitutional on its face as to obviate the necessity for any discussion." *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983); *City of Elizabethton v. Carter County*, 204 Tenn. 452, 463, 321 S.W.2d 822, 827 (1958). Accordingly, in the absence of a patently obvious facial constitutional defect, this Court has consistently declined to consider constitutional challenges to statutes that have not first been asserted in the trial court where the parties would have had an opportunity to introduce evidence that "might be material and pertinent in considering the validity of the statute." *Lawrence v. Stanford*, 655 S.W.2d at 929; *see also In re M.L.P.*, 281 S.W.3d at 394; *In re Valentine*, 79 S.W.3d 539, 544 n.3 (Tenn. 2002).

A second jurisprudential principle, embodied in Tenn. Code Ann. § 29-14-107(b) (2000), Tenn. R. Civ. P. 24.04, and Tenn. R. App. P. 32, requires parties challenging the constitutionality of a statute to notify the Attorney General and Reporter of the challenge by serving a copy of their papers on the Attorney General. The purposes for these requirements are two-fold. First, the notice enables the Office of the Attorney General to discharge its responsibility to defend the constitutionality of state statutes. Tenn. Code Ann. § 8-6-109(b)(9) (Supp. 2008). Second, the joinder of the Attorney General assures that the statute will be vigorously defended. Compliance with this statute and the related rules is mandatory. *Cummings v. Beeler*, 189 Tenn. 151, 158, 223 S.W.2d 913, 916 (1949); *Cummings v. Shipp*, 156 Tenn. 595, 597, 3 S.W.2d 1062, 1063 (1928). This Court has noted that a litigant's failure to give the Attorney General notice of a challenge to the constitutionality of a statute compounds its failure to raise constitutional challenges in the trial court. *In re Adoption of E.N.R.*, 42 S.W.3d at 33.

A third jurisprudential principle is that parties must thoroughly brief the issues they expect the appellate courts to consider. This principle is reflected in Tenn. R. App. P. 13(b) which provides that, with the exception of issues involving the subject matter jurisdiction of the trial and appellate courts, appellate review "generally will extend only to those issues presented for review." Thus, appellate courts may properly decline to consider issues that have not been raised and briefed in accordance with the applicable rules. *See State ex rel. D'Amore v. Melton*, 186 Tenn. 548, 550, 212 S.W.2d 375, 376 (1948). This principle enables judges to be "more confident in the results of their deliberations" because "they have heard the issues argued by attorneys that are duty-bound to fully develop their opposing positions." *State v. Northern*, 262 S.W.3d 741, 766 (Tenn. 2008) (Holder, J., concurring and dissenting).

The current appellate rules permit reviewing courts to exercise their discretion to consider issues that the parties have not raised. Tenn. R. App. P. 13(b). However, the comments to Tenn. R. App. P. 13 make clear that "control over the issues should reside in the parties, not the court" and that appellate courts should "sparingly" exercise their discretion to consider issues that have not been raised by the parties. Tenn. R. App. P. 13 advisory comm'n cmt. subdivision b.

Tenn. R. App. P. 13(b) also signals that the appellate courts should limit their discretion to consider issues not raised by the parties to extremely important circumstances, such as (1) to prevent needless litigation, (2) to prevent injury to the interests of the public, and (3) to prevent prejudice to the judicial process. This Court has never specifically invoked Tenn. R. App. P. 13(b) in a civil proceeding to by-pass the requirement that constitutional issues must be raised in the trial court in the first instance.[22]

**B.**

Mr. Waters never asserted an Article II, Section 28 challenge in the trial court. While he complied with Tenn. Code Ann. § 29-14-107(b) and Tenn. R. Civ. P. 24.04 by serving the Attorney General with papers raising constitutional challenges based on self-incrimination, double jeopardy, and due process, neither his complaint nor any of his other papers mentioned, or even alluded to, an Article II, Section 28 challenge. Thus, the record cannot support the conclusion that Mr. Waters ever notified the Attorney General during the proceedings in the trial court that he was challenging the Unauthorized Substances Tax based on Article II, Section 28.[23]

In addition to the shortcomings in the proceedings before the trial court, the record demonstrates that Mr. Waters did not assert a claim based on Article II, Section 28 in the brief he filed in the Court of Appeals. Accordingly, he failed to comply with the notice requirement in Tenn. R. App. P. 32 and the briefing requirement in Tenn. R. App. P. 27(a)(4) & (7). Instead, Mr. Waters

---

[22] While the doctrine of plain error is frequently used by appellate courts to consider issues in criminal cases that were not raised in the lower courts, there is no doctrine analogous to "plain error" in civil proceedings. This Court has invoked Tenn. R. App. P. 13(b) and the plain error doctrine in a criminal case to consider an issue that had been raised in the trial court but had not been raised in the Court of Criminal Appeals. *State v. Northern*, 262 S.W.3d at 764 n.10. In dissent, now Chief Justice Holder, quoting then Judge Scalia, asserted that "appellate courts do not sit as self-directed boards of legal inquiry and research . . . where counsel has made no attempt to address the issue, we will not remedy the defect, especially where . . . 'important questions of far-reaching significance' are involved." *State v. Northern*, 262 S.W.3d at 767 (Holder, J., concurring and dissenting) (quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983)). The 2009 amendment to Tenn. R. App. P. 36(b) that codifies the plain error doctrine does not, by its own terms, dispense with the requirement that constitutional challenges to a statute must be raised in the trial court in the first instance.

[23] In footnote 8 of its opinion, the Court brushes aside Mr. Waters's failures to assert an Article II, Section 28 claim in the trial court and to provide the Attorney General with the required notice by observing that the Attorney General "has not challenged the lack of joinder as a party." The State quite clearly points out in its brief filed in this Court that Mr. Waters never challenged the Unauthorized Substances Tax in the trial court based on Article II, Section 28. Failure to raise a constitutional issue is, ipso facto, a failure to comply with Tenn. Code Ann. § 29-14-107(b) and Tenn. R. Civ. P. 24.04. Any other interpretation of these requirements undermines their salutary purpose which is to ensure the vigorous defense of statutes whose constitutionality has been challenged. These jurisprudential principles exist for the benefit of the courts, and thus the courts may invoke them even when the parties have not.

provided the Court of Appeals with a copy of a brief that another taxpayer had filed in a separate, unrelated appeal pending before the Court of Appeals in Nashville[24] and informed the appellate court that he was "adopt[ing] [this brief] in total for more detailed analysis" of the issues he had raised in his own brief.[25]

The Commissioner of Revenue did not respond to all the issues raised in the *Robbins v. Chumley* brief. Instead, the Commissioner specifically addressed only "those arguments expressly presented in the brief filed by Waters." However, out of an abundance of caution, the Commissioner requested the appellate court to consider its original brief and reply brief in the *Robbins v. Chumley* appeal, "[t]o the extent that the Court permit[ted] Waters to 'adopt' or incorporate by reference."[26]

The Court of Appeals decided the case solely on the ground that the Unauthorized Substances Tax violated Article II, Section 28 – an issue that Mr. Waters had not raised or argued in the trial court or in the appellate court. Thus, the Attorney General was never put on notice that the appellate court was actively considering an Article II, Section 28 claim and, therefore, was not afforded an opportunity to directly address whether the Unauthorized Substances Tax violated Article II, Section 28 before the appellate court handed down its opinion.

It is difficult to read the record in this case objectively without coming to the conclusion that the Attorney General was not given a full and fair opportunity in either the trial court or the appellate court to defend the Unauthorized Substances Tax against a constitutional challenge based on Article II, Section 28. The result is that this Court is being asked to pass on the constitutionality of a statute based on a flawed and incomplete record. I cannot help but believe that the outcome of this case has been influenced by these procedural irregularities.

## IV.

Despite procedural irregularities that would normally scuttle a challenge to a statute's constitutionality, the Court has held that the Unauthorized Substances Tax is unconstitutional on its face. This means that the Court has determined that there are absolutely no circumstances in which this tax could be applied in a constitutional manner.

A statute, including a tax statute, may be found to be constitutional in some circumstances but not in others. *McConnell v. City of Lebanon*, 203 Tenn. 498, 514, 314 S.W.2d 12, 19 (1958);

---

[24] *Robbins v. Chumley*, No. M2006-01730-COA-R3-CV.

[25] The taxpayer in *Robbins v. Chumley* had asserted that the tax on unauthorized substances exceeded the General Assembly's power under Article II, Section 28, but the trial court had rejected this argument. *Robbins v. Chumley*, No. 05-2363-IV, Memorandum Opinion and Order at p. 5 (Davidson Chan. filed July 10, 2006).

[26] Even if one were to generously construe Mr. Waters's brief as an attempt to incorporate the Article II, Section 28 argument in the brief filed in *Robbins v. Chumley* into his brief, it would have been improper to permit him to do so. Tenn. R. App. P. 27 (j) allows for adoption of "any part of the brief of another party" in cases involving multiple parties. However, I am "unaware of any appellate procedure whereby one can incorporate by reference a brief from an unrelated case involving parties who are not parties to the appeal." *State v. Lunati*, 665 S.W.2d 739, 751 (Tenn. Crim. App. 1983); *cf. State v. Dellinger*, 79 S.W.3d 458, 462 n.2 (Tenn. 2002).

*Int'l Harvester Co. v. Carr*, 466 S.W.2d 207, 212-13 (Tenn. 1971) (listing cases). Accordingly, this Court has recognized the distinction between facial challenges and "as applied" challenges to a statute's constitutionality. *See Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 454-55 (Tenn. 1995) (permitting administrative agencies to consider "as applied" challenges but not facial challenges); *Burford v. State*, 845 S.W.2d 204, 210 (Tenn. 1992) (upholding the facial constitutionality of the Post-Conviction Procedure Act's statute of limitations while invalidating its application to a particular prisoner). In fact, we have entertained both types of constitutional challenges to tax statutes. *See, e.g., FMC Corp. v. Woods*, 618 S.W.2d 307, 310 (Tenn. 1981), *superseded by statute as recognized in Kellogg Co. v. Olsen*, 675 S.W.2d 707, 708-09 (Tenn. 1984).

A facial challenge to a statute involves a claim that the statute fails an applicable constitutional test and should be found invalid in all applications. *United States v. Salerno*, 481 U.S. 739, 745 (1987). A facial challenge to a statute is the most difficult challenge to mount successfully. *Lynch v. City of Jellico*, 205 S.W.3d at 390 (quoting *United States v. Salerno*, 481 U.S. at 745). The presumption of a statute's constitutionality applies with even greater force when a facial challenge is made. *Gallaher v. Elam*, 104 S.W.3d at 459; *In re Burson*, 909 S.W.2d 768, 775 (Tenn. 1995). Accordingly, the challenger must establish that no set of circumstances exists under which the statute would be valid. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. at ___, 128 S. Ct. at 1190 (quoting *United States v. Salerno*, 481 U.S. at 745); *Lynch v. City of Jellico*, 205 S.W.3d at 390 (quoting *Davis-Kidd Booksellers, Inc. v. McWherter*, 866 S.W.2d 520, 525 (Tenn. 1993)).[27] Stated another way, the challenger must demonstrate that the law cannot be constitutionally applied to anyone. 1 Lawrence H. Tribe, *American Constitutional Law* § 3-31, at 611 (3d ed. 2000) (hereinafter "*American Constitutional Law*").

Courts considering a facial challenge to a statute should proceed with caution and restraint because holding a statute facially unconstitutional may result in unnecessary interference with legitimate governmental functions. *See Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216 (1975). Accordingly, the courts view facial invalidity as "manifestly strong medicine" and invoke it sparingly and only as a last resort. *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973).

There are at least three reasons for the courts' reticence to invalidate statutes on their face. First, claims of facial invalidity often rest on speculation and thus run the risk of the "premature interpretation of statutes on the basis of factually barebones records." *Wash. State Grange v. Wash.*

---

[27] We are not unique in our adoption of this principle regarding facial challenges to a statute's constitutionality. The United States Supreme Court has pointed out that in order to be found unconstitutional on its face, the statute must be unconstitutional in every conceivable circumstance. *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 796 (1984). Other state supreme courts have also recognized and regularly invoke the same principle. *See e.g.*, *State v. Native Vill. of Nunapitchuk*, 156 P.3d 389, 405 (Alaska 2007); *People v. Montour*, 157 P.3d 489, 499 (Colo. 2007); *Fla. Dep't of Revenue v. City of Gainesville*, 918 So.2d 250, 256 (Fla. 2005); *Lochsa Falls, L.L.C. v. State*, 207 P.3d 963, 971-72 (Idaho 2009); *Napleton v. Vill. of Hinsdale*, 891 N.E.2d 839, 845 (Ill. 2008); *State v. Hernandez-Lopez*, 639 N.W.2d 226, 237 (Iowa 2002); *Minn. Voters Alliance v. City of Minneapolis*, ___ N.W.2d ___, 2009 WL 1617771, at *4 (Minn. 2009); *State v. Perry*, 275 S.W.3d 237, 240 (Mo. 2009); *Moran Towing Corp. v. Urbach*, 787 N.E.2d 624, 627 (N.Y. 2003); *Council of Orgs. & Others for Ed. About Parochiaid v. Governor*, 566 N.W.2d 208, 214-15 (Mich. 1997); *Hamit v. Hamit*, 715 N.W.2d 512, 524-25 (Neb. 2006); *State v. Bryant*, 614 S.E.2d 479, 485-86 (N.C. 2005); *Groch v. Gen. Motors Corp.*, 883 N.E.2d 377, 386 (Ohio 2008); *Clifton v. Allegheny County*, 969 A.2d 1197, 1222 (Pa. 2009); *Alston v. Commonwealth*, 652 S.E.2d 456, 464 n.5 (Va. 2007).

*State Republican Party*, 552 U.S. at ___, 128 S. Ct. at 1191 (quoting *Sabri v. United States*, 541 U.S. 600, 609 (2004)). Second, facial challenges "run contrary to the fundamental principle of judicial restraint" by inviting the courts to "formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. at ___, 128 S. Ct. at 1191; *see also Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) (quoting *Liverpool, N.Y. & Phila. S.S. Co. v. Comm'rs of Emigration*, 113 U.S. 33, 39 (1885)). Third, "facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. at ___, 128 S. Ct. at 1191; *see also Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 329 (2006) (quoting *Regan v. Time, Inc.*, 468 U.S. 641, 652 (1984) (plurality opinion)).

Thus, a successful facial constitutional challenge results in the wholesale invalidation of the statute. While passing on the validity of a statute wholesale may be efficient in the abstract, any gain is often offset by losing the lessons taught by the particular. *Sabri v. United States*, 541 U.S. at 608-09. For this reason, many courts view "as applied" challenges as the "basic building blocks" of constitutional adjudication. *Gonzales v. Carhart*, 550 U.S. 124, 168 (2007) (quoting Richard H. Fallon, Jr., *As-Applied and Facial Challenges and Third-Party Standing*, 113 Harv. L. Rev. 1321, 1328 (2000)). "As applied" challenges are preferred because, if they are successful, they do not render the entire statute completely inoperative. *Sanger v. Dennis*, 148 P.3d 404, 410-11 (Colo. Ct. App. 2006); *City of Redmond v. Moore*, 91 P.3d 875, 878 (Wash. 2004); *State v. Konrath*, 577 N.W.2d 601, 607 n.13 (Wis. 1998); *see also American Constitutional Law* § 3-31, at 610-12. In some circumstances, the courts can best fulfill the legislature's intent by prohibiting only the unconstitutional applications of a statute, while allowing the State to enforce the statute in other circumstances.

An "as applied" challenge presumes that the statute is generally valid. *See Tobe v. City of Santa Ana*, 892 P.2d 1145, 1156 (Cal. 1995); *Developmental Pathways v. Ritter*, 178 P.3d 524, 533-34 (Colo. 2008); *In re D.L.C.*, 124 S.W.3d 354, 362 (Tex. App. 2003); *Sanderson v. State*, 165 P.3d 83, 92 (Wyo. 2007). It merely asserts that specific applications of the statute are unconstitutional. *Dowdell v. City of Jeffersonville*, 907 N.E.2d 559, 564-65 (Ind. Ct. App. 2009); *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71*, 740 N.W.2d 244, 250 (Mich. 2007); *City of Redmond v. Moore*, 91 P.3d at 878. Thus, an "as applied" challenge only requires the challenger to demonstrate that the statute operates unconstitutionally when applied to the challenger's particular circumstances. *Lochsa Falls L.L.C. v. State*, 207 P.3d at 971-92; *Gillenwaters v. State*, 205 S.W.3d 534, 536 n.3 (Tex. Crim. App. 2006); *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 518 n.16 (Tex. 1995).

"As applied" challenges require courts to consider the constitutionality of statutes on a case-by-case basis, *Tobe v. City of Santa Ana*, 892 P.2d at 1153, and to analyze the facts of the particular case to determine whether the application of the challenged statute deprived the challenger of a constitutionally protected right. *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 174-75 (2d Cir. 2006); *Tobe v. City of Santa Ana*, 892 P.2d at 1152-53; *Napleton v. Village of Hinsdale*, 891 N.E.2d at 845-46. Upholding an "as applied" challenge to the constitutionality of a statute obviates the need

for addressing a facial challenge to the statute. *City of Knoxville v. Entm't Res., LLC*, 166 S.W.3d 650, 659-60 (Tenn. 2005) (Drowota, C.J., concurring).

Mr. Waters's other constitutional challenges to the Unauthorized Substances Tax were phrased in the broad terms of a facial challenge. However, because he never challenged the constitutionality of the Unauthorized Substances Tax based on Article II, Section 28, it would be useless to attempt to characterize Mr. Waters's challenge based on Article II, Section 28 as either a facial challenge or an "as applied" challenge. The intermediate appellate court's opinion tracks the reasoning associated with a facial challenge. The brief Mr. Waters filed in this Court tracks the reasoning of the Court of Appeals. In its opinion, the Court goes to great lengths to expressly eschew any reasoning or analysis normally associated with an "as applied" challenge. Accordingly, the Court in this case can only be addressing the facial constitutionality of the Unauthorized Substances Tax.

## V.

While the Court today holds that the taxing power under Article II, Section 28 is broad enough to permit the General Assembly to impose a tax on persons who sell illegal drugs, it also holds that the Unauthorized Substances Tax enacted by the General Assembly in 2004 is facially unconstitutional. The inquiry upon which the facial constitutionality of this tax turns is a question requiring at least as much common sense as legal analysis. The pivotal question is whether among all the individuals possessing a substantial quantity of cocaine there are any individuals who sell, barter, or trade or intend to sell, barter, or trade the cocaine. If the answer to the question is "yes," the Unauthorized Substances Tax is not facially unconstitutional because it can be applied constitutionally to those individuals.

The Court states that its "analysis of the applicability of the merchants and peddlers provision of article II, section 28 might be different if the legislature had statutorily defined 'dealers' as those who sell or intend to sell unauthorized substances, rather than those in the possession of the illegal drugs." My disagreement with the Court's analysis turns precisely upon this point. Individuals who sell, barter, or trade or who intend to sell, barter, or trade unauthorized substances are included within the General Assembly's definition of "dealer." In fact, they are precisely the individuals at whom the General Assembly aimed this tax.

## A.

The legislative history of the Unauthorized Substances Tax demonstrates unambiguously that the General Assembly was attempting to impose a tax on the merchants and peddlers of unauthorized substances by taxing individuals who possess substantial quantities of these substances. During consideration of the bill in the House Judiciary Committee, Representative Charles Curtiss, the sponsor of the bill, noted that the tax applied to individuals "with large enough quantities of drugs to prove that they have been selling drugs or that they are planning on selling drugs."[28] He indicated

---

[28] Representative Charles Curtiss, House Judiciary Committee, May 5, 2004.

that the tax's "trigger[]" was "selling illegal drugs in the State of Tennessee."[29]  Representative Curtiss added that "once somebody is caught with a fixed amount it is presumed that they have it for the purpose of resale."[30]  Representative Johnny Shaw indicated that under the Unauthorized Substances Tax anyone going into "that business needs to lay a little [money] aside for taxes."[31]

During the floor debate in the House of Representatives, Representative Curry Todd pointed out that "the intent of this legislation is those that are out there drug trafficking and continue to do this and make a profit, this is actually a way to impose a tax upon their profits that they are making with regard to the drug trade."[32]  Representative Susan M. Lynn noted that the tax placed the State in a position of "appearing to profit from the sale of illegal drugs;" accordingly, she clarified that taxation thereupon was not an endorsement of the illegal drug trade but instead was "using" drug trade money and "taking money back" from this illegal enterprise in order to counteract this illicit activity.[33]

When the bill was considered by the Senate Finance, Ways and Means Committee, Senator Randy McNally, the sponsor of the bill, explained that the tax "gets at the profits of the drugs."[34]  During the floor debate in the Senate, Senator Steve Cohen, addressing the quantities of the substances included in the definition of a "dealer," stated "I think that is probably an appropriate amount because that does indicate . . . that somebody probably has more than [for] personal possession."[35]  Senator Cohen also noted the existence of a presumption of intent to sell drugs that existed in the criminal context and asked for support for an amendment he was offering to a different bill that same legislative session so as to provide for conformity between the amounts for presumed intent to sell under the Unauthorized Substances Tax and the criminal law measure.[36]

**B.**

The General Assembly's definition of a "dealer" as an individual in possession of substantial quantities of an unauthorized substance is rationally connected with the legislative purpose of the Unauthorized Substances Tax – taxing those profiting from the sale of these substances.  In fact, Tenn. Code Ann. § 39-17-419 (2006) expressly provides that

---

[29]Representative Charles Curtiss, House Judiciary Committee, May 5, 2004.

[30]Representative Charles Curtiss, House Judiciary Committee, May 18, 2004.

[31]Representative Johnny Shaw, House Judiciary Committee, May 18, 2004.

[32]Representative Curry Todd, House Session, May 19, 2004.

[33]Representative Susan M. Lynn, House Session, May 19, 2004.

[34]Senator Randy McNally, Finance, Ways and Means Committee, Apr. 6, 2004.

[35]Senator Steve Cohen, Senate Session, May 20, 2004.

[36]Senator Steve Cohen, Senate Session, May 20, 2004.

[i]t may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing.[37]

Similarly, the Tennessee Pattern Jury Instructions include the following:

It may be inferred from the amount of controlled substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing them.

T.P.I. – Crim. 31.04, 7 Tenn. Practice: Tennessee Pattern Jury Instructions Criminal 839, 840 (2008). The Tennessee Court of Criminal Appeals has rejected the argument that the inferential link between the possession of large amounts of drugs and the intent to sell the drugs is irrational.[38]

In accordance with this statutory inference and the accompanying jury instruction, the Court of Criminal Appeals has repeatedly relied upon the inference arising from the possession of a large quantity of controlled substances to uphold criminal convictions and sentences for possession with intent to sell or distribute those substances. In many instances, the quantity of cocaine found to be sufficient to support an inference that it was possessed for the purpose of selling or distributing has been less than that required for imposition of the Unauthorized Substances Tax and far less than Mr. Waters had in his possession.[39]

---

[37]Thus, the mere possession of 0.5 grams of cocaine exposes the possessor to a Class B felony charge. Alternatively, "a casual exchange among individuals of a small amount of a controlled substance" may lead to the inference that the substance was "possessed not with the purpose of selling or otherwise dispensing." Tenn. Code Ann. § 39-17-419.

[38]*Williams v. State*, 506 S.W.2d 193, 196 (Tenn. Crim. App. 1973).

[39]Mr. Waters had 999.2 grams of cocaine in his possession when he was arrested. For the purpose of the Unauthorized Substances Tax, the General Assembly has defined a "dealer" as an individual in possession of more than 7 grams of cocaine. Tenn. Code Ann. § 67-4-2802(3)(A) (2006). The following are a few examples of the many defendants who possessed quantities of cocaine smaller than that required for assessment of the Unauthorized Substances Tax and whose convictions have been affirmed on appeal against sufficiency of the evidence challenges based, in part, on the statutory inference that possession of a large quantity of cocaine provides a basis for concluding that the defendant intended to sell or deliver the cocaine: Justin Bradley Haynie, Jonathan Anthony Morris, and Judson F. Ouzts (2.7 grams), Reginald Anthony Laye (2.7 grams), and Wilfred Hyon Warren (5 grams). *State v. Haynie*, No. W2006-01840-CCA-R3-CD, 2007 WL 4335481, at *14-16 (Tenn. Crim. App. Dec. 7, 2007), *perm. app. denied* (Tenn. May 5, 2008); *State v. Laye*, No. M2006-02020-CCA-R3-CD, 2007 WL 4358177, at *3-4 (Tenn. Crim. App. Dec. 13, 2007) (No Tenn. R. App. P. 11 application filed); *State v. Warren*, No. E2007-02304-CCA-R3-CD, 2008 WL 4790647, at *3-4 (Tenn. Crim. App. Oct. 31, 2008) (No Tenn. R. App. P. 11 application filed). The following are a few examples of the many defendants who possessed more than the amount specified in the Unauthorized Substances Tax but less than Mr. Waters and whose convictions were affirmed when the appellate court similarly relied on the amount of drugs they possessed: Joshua J. McKissick (30.1 grams), Kendrick D. Rivers (20.2 grams), Marvin Wilkerson (9 grams), and Jermaine R. Wiseman (66.9 grams). *State v. McKissick*, No. M2006-01996-CCA-R3-CD, 2007 WL 2907303, at *4 (Tenn. Crim. App. Oct. 1, 2007), *perm. app. denied* (Tenn. Jan. 28, 2008); *State v. Rivers*, No.

(continued...)

-13-

The legislative history of the Unauthorized Substances Tax unambiguously supports the conclusion that the General Assembly was endeavoring to impose a tax on merchants and peddlers of unauthorized substances. The General Assembly levied the tax on "dealers" of unauthorized substances and defined a "dealer" as an individual in possession of a substantial quantity of an unauthorized substance. The connection between possession of a substantial quantity of an unauthorized substance and being a merchant and peddler of that substances is a rational one. In fact, the General Assembly has, by statute, created an inference in criminal cases that the possession of certain quantities of controlled substances can support the conclusion that the individual possessing those substances had them for the purpose of selling or distributing them. Tennessee's courts consistently affirm criminal convictions for possession with intent to sell by relying heavily upon the possession by the defendant of quantities of controlled substances much less than that possessed by Mr. Waters in this case.

## C.

The General Assembly enacted the Unauthorized Substances Tax to impose a tax on persons who profit from the illegal sale of controlled substances. The statute is based on the assumption that individuals possessing substantial quantities of controlled substances without legal authorization intend to sell, barter, or trade these substances and, therefore, are merchants and peddlers of these substances. This is a rational assumption that draws considerable support from the inferences applied in the context of criminal prosecutions.

The facial constitutionality of the Unauthorized Substances Tax hinges on whether there are any circumstances under which its application would be constitutional. If there is no set of reasonably conceivable circumstances in which the tax could be constitutionally applied, then it must be struck down. If, however, there are circumstances in which it can be constitutionally applied, then the tax must be upheld against a facial challenge.

The General Assembly's definition of a "dealer" in Tenn. Code Ann. § 67-4-2802(3) rests on the rational assumption that persons possessing substantial quantities of unauthorized substances intend to sell them. In today's opinion, the Court appears to have disregarded this assumption by concluding that there are no merchants and peddlers among those who possess substantial quantities of unauthorized substances or that there exists no rational relationship between the possession of large quantities of unauthorized substances and the intent to sell them.

The Court's conclusion is particularly surprising in light of the fact that many Tennesseans have received lengthy prison sentences and substantial fines based on the inference that an individual possessing a substantial quantity of an unauthorized substance possesses that substance with the intent to sell or distribute it. Given the heightened standard of proof that applies in the criminal law context, I am perplexed as to how Tennessee courts can sustain those convictions and sentences on

[39](...continued)
W2006-01120-CCA-R3-CD, 2008 WL 65311, at *2-3 (Tenn. Crim. App. Jan. 7, 2008) (No Tenn. R. App. P. 11 application filed); *State v. Wilkerson*, No. E2006-01743-CCA-R3-CD, 2007 WL 2917785, at *3 (Tenn. Crim. App. Oct. 9, 2007), *perm. app. denied* (Tenn. Mar. 3, 2008); *State v. Wiseman*, No. M2006-00400-CCA-R3-CD, 2007 WL 1628866, at *3-4 (Tenn. Crim. App. June 4, 2007) (No Tenn. R. App. P. 11 application filed).

one hand, while on the other hand determine that there is not even a rational relationship between possession of substantial quantities of unauthorized substances and being a merchant or peddler thereof when considering tax assessments.

Individuals who possess substantial quantities of unauthorized substances for the purpose of selling, bartering, or trading them are unquestionably merchants and peddlers for the purpose of Article II, Section 28. Accordingly, the Unauthorized Substances Tax may be applied to them without offending the Tennessee Constitution. Because the Unauthorized Substances Tax can be applied in a constitutional manner, Mr. Waters's facial challenge to the tax must fail.

The presumption that a statute is constitutional applies with even greater force in the face of a facial constitutional challenge. *Gallaher v. Elam*, 104 S.W.3d at 459; *In re Burson*, 909 S.W.2d at 775. Mr. Waters has failed to rebut this presumption by demonstrating that this tax is so obviously unconstitutional on its face as to obviate the necessity for any discussion. Because Mr. Waters has not carried his burden, the Court has no basis for concluding that the Unauthorized Substances Tax is facially unconstitutional.

## VI.

Where the General Assembly erred was not, as found by the Court, in drafting its definition of "dealer" too narrowly and thereby the missing merchants and peddlers of unauthorized substances, but rather by drafting the definition of "dealer" too broadly. With one narrow exception,[40] the Unauthorized Substances Tax fails to expressly anticipate that an individual in possession of a large quantity of an unauthorized substance might not be a merchant or peddler of the substance. For example, Mr. Waters essentially asserts in this case that he is only a bulk consumer of cocaine for his personal use and that he is neither a merchant nor a peddler of cocaine. If Mr. Waters's assertion is true, then imposing the Unauthorized Substances Tax on him would exceed the General Assembly's power under Article II, Section 28 to tax merchants and peddlers.

Current law provides a plain, adequate, and speedy remedy for persons possessing a substantial quantity of an unauthorized substance for their personal use who have received an erroneous Unauthorized Substances Tax assessment. Tenn. Code Ann. § 67-4-2807 (Supp. 2008) provides that a "dealer may seek review of the assessment as provided in chapter 1, part 18, of this title." Thus, like other taxpayers, a dealer may challenge his or her tax assessment in the following manner:

> [I]f the taxpayer against whom the assessment is made believes the assessment to be unjust, illegal or incorrect, the taxpayer's remedies shall be as follows:
>
> > (A) The taxpayer may pay the tax and file a claim for refund of the tax and proceed as provided in this part; or

---

[40] "The tax levied in this part does not apply to a substance in the possession of a dealer who is authorized by law to possess the substance. This exemption applies only during the time the dealer's possession of the substance is authorized by law." Tenn. Code Ann. § 67-4-2804(a) (2006).

(B) The taxpayer may file suit against the commissioner in chancery court in the appropriate county in this state, challenging all or any portion of the assessment of such tax, including any interest and penalty associated with the tax.

Tenn. Code Ann. § 67-1-1801(a)(1) (2006). Where a possessor of a substantial quantity of cocaine is not actually a merchant or a peddler of cocaine, it would be unconstitutional, hence illegal, to apply the Unauthorized Substances Tax to that individual. If Mr. Waters is not the merchant or peddler that the General Assembly, the law enforcement officials, and the Department of Revenue have presumed him to be, he should prevail on his constitutional challenge to the tax assessment on an "as-applied" basis.

## VII.

Legitimate businesses in Tennessee – from sole proprietors to multi-national corporations – are responsible for paying a wide variety of taxes, most notably franchise and excise and sales and use taxes.[41] Unlike the operators of these legal business enterprises, merchants and peddlers of illegal drugs have long been able to engage in their illicit profit-making endeavors while escaping taxation. Thus, even though their business enterprises impose significant costs on the State and on local governments, merchants and peddlers of illegal drugs have been, in essence, operating in Tennessee on a tax-exempt basis. The General Assembly addressed this problem in 2004 when it enacted the Unauthorized Substances Tax.

Notwithstanding the "wide-reaching effects" of striking down statutes on their face, *Davis Kidd Booksellers, Inc. v. McWherter*, 866 S.W.2d at 525, the Court today finds that the General Assembly's effort to address the enormous costs imposed on Tennessee's taxpayers as a result of the illegal drug trade is facially unconstitutional. Whether the Unauthorized Substances Tax is wise or foolish is not for this Court to decide. Accepting the fact that the General Assembly decided unanimously that drug dealers should not escape taxation, our only task is to measure this tax against the requirements of the state and federal constitutions.

While the Unauthorized Substances Tax cannot be imposed constitutionally on persons who are not merchants or peddlers, it can be imposed on persons who are. Among the persons included in the definition of "dealer" are persons who possess large amounts of illegal drugs without legal authority and who intend to sell, barter, trade, or otherwise distribute these illegal drugs. These persons are merchants and peddlers who can be taxed consistent with Article II, Section 28. As a result of the Court's ruling today, these merchants and peddlers of illegal drugs cannot be taxed even though they may be criminally prosecuted for possession of the same drugs with intent to sell.

This Court's exclusive constitutional prerogative to assess the constitutionality of state statutes is a weighty responsibility that demands extraordinary caution and precision. Like a surgeon

---

[41] *See generally* Tennessee Advisory Commission on Intergovernmental Relations & University of Tennessee Center for Business and Economic Research, *The Structure of State Taxes in Tennessee: A Fiscal Primer* § III (2003), *available at* http://cber.utk.edu/pubs/tacir203.pdf (last visited June 9, 2009).

performing a delicate operation to remove diseased tissue from a vital organ, we must remove no more nor no less tissue than necessary. By deciding that the Unauthorized Substances Tax is facially unconstitutional, the Court has gone farther than removing diseased statutory tissue (the application of the tax to persons who are not merchants or peddlers). It has removed healthy statutory tissue (the application of the tax to persons who are merchants and peddlers) as well. By finding that the Unauthorized Substances Tax is facially unconstitutional, the Court has effectively prevented the State from enforcing the tax in circumstances where it would be clearly constitutional to do so.

I am authorized to state that Justice Clark concurs in this opinion.

_____
WILLIAM C. KOCH, JR., JUSTICE